[No. 15217-3-I. Division One. May 5, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVE M. BROOKS, *Appellant.*

Eric J. Nielsen of Washington Appellate Defender Association, for appellant.

Norm Maleng, Prosecuting Attorney, and Cindy K. Smith, Deputy, for respondent.

RINGOLD, A.C.J.—Steve Brooks, a juvenile, appeals his conviction of violation of the Uniform Controlled Substances Act (RCW 69.50.401(a)) alleging that the evidence found by school officials in a search of his locker should have been excluded

On October 19, 1983, Vicki Sherwood, vice–principal at Inglemoor High School, received information from a student that appellant Brooks was selling marijuana out of a blue metal box located in locker 372–D. The informant had

a locker in the same locker bay as Brooks.

Ms. Sherwood believed Brooks to be a drug user based upon the reports of three of Brooks' teachers that he appeared to be under the influence of drugs or alcohol. Sherwood had confronted Brooks about his suspected drug usage on three prior occasions. Every time she confronted Brooks, Sherwood believed that Brooks was under the influence. Sherwood had also spoken with Brooks' mother about his suspected drug use.

Brooks was also known to spend time during school hours across the street at a place believed by school authorities to be the site of drug trafficking among students. Sherwood had contacted Brooks at this location in the past. Reports that Brooks was suspected of selling drugs led to a fruitless search of the locker assigned to him the week before the student informant reported to Sherwood.

After receiving the student's tip, Sherwood notified the principal and together they went to open locker 372–D.[1] Inside, they found the metal box as described by the informant. Since they could not open the locked box, they closed the locker. Brooks was removed from his classroom and asked to open the locker and place his belongings on the floor. He did so and was then instructed to accompany the principal and Sherwood to the office.

While there, Brooks was asked to open the box. When he refused, the school officials told him that if he did not cooperate, they would call the police. Brooks opened the box and mushrooms were found inside. In response to questioning, Brooks admitted to the school officials that the mushrooms were hallucinogenic and that he was selling them to students. The police were then called and Brooks was arrested. Subsequent analysis confirmed that the mushrooms contained psilocin.

Brooks was charged by information with possession and

---

[1]The locker in which Brooks allegedly kept the blue metal box was not the locker assigned to him by the school.

intent to deliver psilocin mushrooms in violation of the Uniform Controlled Substances Act (RCW 69.50.401(a)). Brooks moved to suppress the mushrooms contending that the search and seizure was illegal. The court and counsel agreed to consolidate the hearing on the motion to suppress with the fact–finding hearing. The court ruled that the search was legal and denied Brooks' motion to suppress. Brooks was found guilty as charged.

## VALIDITY OF SEARCH UNDER FOURTH AMENDMENT[2]

Brooks argues that the search violated the fourth amendment to the United States Constitution because it was not reasonable under *State v. McKinnon,* 88 Wn.2d 75, 558 P.2d 781 (1977). Since the filing of Brooks' brief, however, the United States Supreme Court issued the definitive statement regarding the Fourth Amendment and school searches in *New Jersey v. T.L.O.,* 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985). Accordingly, any Fourth Amendment analysis should proceed in light of that case.

In *T.L.O.,* the Court was faced with the same questions as those posed to our Supreme Court earlier in *McKinnon.* Does the Fourth Amendment apply to searches conducted by school officials and, if so, what level of suspicion is required to justify such a search? As in *McKinnon,* the United States Supreme Court held that the Fourth Amendment does apply, *T.L.O.,* at 333, but joined the majority of courts and concluded

> that the accommodation of the privacy interests of school children with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student

---

[2]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. 4.

should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the . . . action was justified at its inception"; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place". Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

This standard will, we trust, neither unduly burden the efforts of school authorities to maintain order in their schools nor authorize unrestrained intrusions upon the privacy of schoolchildren. By focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense. At the same time, the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools.

(Footnotes and citations omitted.) *T.L.O.*, at 341–43.

This standard was met in Brooks' case. Sherwood received information from a student that Brooks was selling marijuana out of a blue metal box located in a school locker. The informant had a locker in the same locker bay as Brooks. Sherwood believed Brooks to be a drug user based upon three prior reports by teachers and her own observations. Brooks was known to frequent a location believed to be the site of drug trafficking. These are unchallenged findings of fact which this court considers as verities on appeal. *Expert Drywall, Inc. v. Brain*, 17 Wn.

App. 529, 537, 564 P.2d 803 (1977). On the basis of these facts, Sherwood and the school principal searched Brooks' locker and metal box. These searches were justified at their inception because there were reasonable grounds for the school officials to suspect that the search would turn up evidence that Brooks had violated or was violating either the law or the rules of the school. *T.L.O.*, at 341–42. The search was permissible in its scope because it was limited to the search of the locker and metal box whose purported contents justified the search at its inception. *T.L.O.*, at 342.

VALIDITY OF SEARCH UNDER Const. art. 1, § 7[3]

While the search was valid under the Fourth Amendment, Washington may require a more demanding standard under its own constitution. *T.L.O.*, at 343 n.10. Brooks argues that *McKinnon* was decided solely on Fourth Amendment grounds. Since *McKinnon,* the Washington Supreme Court has repeatedly held that article 1, section 7 of our constitution affords broader protections than the Fourth Amendment. In *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983), the court stated that "Const. art. 1, § 7 poses an almost absolute bar to warrantless arrests, searches, and seizures . . ." *Ringer,* at 690. The only exceptions recognized in *Ringer* were searches incident to arrest and searches based upon probable cause where exigent circumstances exist. *Ringer,* at 699–700. Brooks contends that the *Ringer* holding should be applicable to school searches as well.

Brooks' argument basically consists of citations to a number of cases in which the Washington Supreme Court has held that Const. art. 1, § 7 provides greater protections than the Fourth Amendment. Consideration of Brooks' argument that the greater protections of the Washington State Constitution should be extended to school searches requires this court to consider the reasons for this recent

---

[3]"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. 1, § 7.

trend in Washington constitutional jurisprudence.[4]

First, the rationale for providing more expansive protections in article 1, section 7 is firmly rooted in the doctrine of stare decisis. In *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984), the court stated that:

> Prior reliance on federal precedent and federal constitutional provisions do not preclude us from taking a more expansive view of Const. art. 1, § 7, *where the United States Supreme Court determines to further limit federal guaranties in a manner inconsistent with our prior pronouncements.*

(Italics ours.) *Jackson,* at 439.

Second, the plethora of cases starting with *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) validated warrantless searches and seizures, so that the exceptions almost submerged the Fourth Amendment guaranties. As one commentator has put it:

> The theory that best explains what the Washington Supreme Court has done (though not what it has said) in interpreting article I, section 7 is that the constitutional provision embodies the orthodox view of the fourth amendment. The orthodox view is that the United States Supreme Court's fourth amendment jurisprudence is fundamentally sound, except to the extent that its logical principles have been savaged by a number of patently irrational decisions, particularly on the part of the "Burger Court."

Nock, *Seizing Opportunity, Searching for Theory: Article I, Section 7,* 8 U. Puget Sound L. Rev. 331, 352 (1985). This analysis gains great support when one considers that the recent Washington cases acknowledging the greater protections afforded by article 1, section 7 were drafted in response to specific United States Supreme Court holdings.[5]

---

[4]In *State v. Jewett,* 146 Vt. 221, 500 A.2d 233 (1985), the court offers helpful suggestions as to the types of approaches to take in arguing cases on state constitutional grounds.

[5]*State v. Myrick,* 102 Wn.2d 506, 688 P.2d 151 (1984), response to *Oliver v. United States,* 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984); *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984), response to *Illinois v. Gates,* 462

Accordingly, this court must first determine if the recent Supreme Court holding in *T.L.O.* limits Fourth Amendment guaranties in a manner inconsistent with the holding of the Washington Supreme Court in *McKinnon.*

In *T.L.O.*, the Supreme Court held that the Fourth Amendment simply requires that a school search be based upon reasonable grounds, not probable cause. *T.L.O.*, at 340–41. This holding comports with the standard enunciated in *McKinnon* where the court stated that

> [a]lthough a student's right to be free from intrusion is not to be lightly disregarded, for us to hold school officials to the standard of probable cause required of law enforcement officials would create an unreasonable burden upon these school officials. Maintaining discipline in schools oftentimes requires immediate action and cannot await the procurement of a search warrant based on probable cause. We hold that the search of a student's person is reasonable and does not violate his Fourth Amendment rights, if the school official has reasonable grounds to believe the search is necessary in the aid of maintaining school discipline and order.

*McKinnon,* at 81. The court in *T.L.O.* cited *McKinnon* as an example of the majority rule to which the United States Supreme Court was subscribing. *T.L.O.*, at 332 n.2.

The *McKinnon* court went further, however. It stated that

> [t]he factors to be judged in determining whether the school official had reasonable grounds are the child's age, history, and school record, the prevalence and seriousness of the problem in the school to which the search was directed, the exigency to make the search without delay,

U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); *State v. Chrisman,* 100 Wn.2d 814, 676 P.2d 419 (1984), response to *Washington v. Chrisman,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982); *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983), response to *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) and *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982), response to *Michigan v. DeFillippo,* 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979); *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980), response to *United States v. Salvucci,* 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980).

and the probative value and reliability of the information used as a justification for the search.

*McKinnon,* at 81. Application of these factors was recently reaffirmed in *Kuehn v. Renton Sch. Dist. 403,* 103 Wn.2d 594, 598, 694 P.2d 1078 (1985). While all the factors need not be found, their total absence will render the search unconstitutional. *Kuehn,* at 598.

Brooks contends the enunciation of these factors represents a higher standard of protection than that articulated in *T.L.O.* The express holding of *McKinnon* is that a school official need only have "reasonable grounds" to validly conduct a locker search. *McKinnon,* at 81. Accordingly, since the holding in *T.L.O.* is consistent with our Supreme Court's holding in *McKinnon,* we conclude that article 1, section 7 affords students no greater protections from searches by school officials than is guaranteed by the Fourth Amendment.

Since the search of the locker and metal box was valid under both *T.L.O.* and *McKinnon,* this court need not reach the question of whether Brooks' consent to open the metal box was voluntarily given.

Affirmed.

SWANSON and WEBSTER, JJ., concur.