91 P.3d 485

**In the interest of John DOE, Born on April 2, 1987, Minor.**

No. 25876.

Supreme Court of Hawai'i.

May 28, 2004.

As Amended June 2, 2004.

Tracy Murakami, Deputy Prosecuting Attorney, on the briefs, for appellant State of Hawai'i.

Lesley N. Maloian, Deputy Public Defender, on the briefs, for minor appellee John Doe.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, AND DUFFY, JJ.

Opinion of the Court by MOON, C.J.

Plaintiff-appellant State of Hawai'i [hereinafter, the prosecution] appeals from the May 9, 2003 findings of fact (FOF), conclusions of law (COL), and order of the Family Court of the Fifth Circuit Court, the Honorable Calvin K. Murashige presiding, granting defendant-appellee John Doe's [hereinafter, Minor] motion to suppress items of evidence. On appeal, the prosecution essentially contends that: (1) the family court erred in concluding that the anonymous Crime Stoppers' tip regarding Minor was tainted and could not form the basis of reasonable suspicion to search him; and (2) school officials had reasonable suspicion to search Minor based on, *inter alia*, the anonymous Crime Stoppers' tip. As discussed more fully *infra*, Section III, we believe that, even assuming the Crime Stoppers' tip was not "tainted," school officials nonetheless lacked reasonable suspicion to justify the search of Minor. Accordingly, we affirm the family court's May 9, 2003 FOF, COL, and order.

## I. BACKGROUND

On November 7, 2002, Dianne Ayre, vice principal of Kapa'a High School, "received a Crime Stoppers['] report from [Kaua'i Police Department Officer Mark Ozaki] that [Minor] had marijuana and was selling it on campus." At the time, Officer Ozaki was assigned to Kapa'a High School as an on-campus police officer and had received the

anonymous tip directly from Crime Stoppers. Officer Ozaki did not inform Ayre, nor was Ayre aware, of any of the circumstances under which the tip came in other than it being a Crime Stoppers' tip.

After receiving the information from Officer Ozaki, Ayre radioed security personnel and directed them to go to Minor's classroom. Ayre intended to have Minor searched at the classroom because he had run from school officials in the past. Minor was not in his classroom, and Ayre instructed security personnel "to watch for him."

Security personnel thereafter saw Minor reentering campus after apparently having gone off campus. Ayre "instructed security to follow [Minor] until he came closer into campus because he had run in the past." According to Ayre, "Officer Ozaki also came out to help us direct him to the office. Officer Ozaki—who is the one who made contact with [Minor] and asked him to come to the office, and he did so."

Gilmore Youn, principal of the school, and Ayre "explained [to Minor] why he was in our office," at which point Minor became "agitated" and "tried to leave the room." A search of Minor by security personnel resulted in the recovery of, *inter alia*, a plastic bag containing two marijuana cigarettes and some cash.

On January 23, 2003, the prosecution filed a petition against Minor, alleging that he committed the offense of promoting a detrimental drug in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 712-1249 (1993). On March 10, 2003, Minor filed his motion to suppress, essentially arguing that school officials did not have reasonable suspicion to conduct the search. At the suppression hearing on March 12, 2003, Arye was the only witness to testify. In granting Minor's motion, the circuit court ruled:

> THE COURT: Okay. The Court is going to rule as follows. I agree that—I would go as far as to say that school officials can react to anonymous tips such as Crime Stoppers; that the tip can come from police officer to the school. In this case, I'm bounded [sic] by the fact that Officer Ozaki is assigned to the school; the

tip goes to him; and he, in turn, passes it on it [sic] the school.

> If it was intended for the school, then there's no reason that Crime Stoppers can [sic] go directly from the police station or police dispatch to the school. But the fact that it goes to Officer Ozaki somehow, I think, it taints the basis under which the school gives to act.

> So the Court will grant the motion to suppress. . . .

The family court's May 9, 2003 FOF, COL, and order includes the following COLs:

1. Searches or seizures in the school context must be reasonable under all the circumstances and must be (a) justified at their inception and (b) reasonably related in scope to the circumstances which justified the interference in the first place. *In the Interest of Jane Doe*, 77 Hawai'i 435, 443, 887 P.2d 645 (1994).

2. "Reasonable suspicion requires articulable facts, together with rational inferences from those facts, warranting an objectively reasonable suspicion that the student or students to be searched are violating or have violated a rule, regulation, or statute." *Id.* at 444–445, 887 P.2d 645.

3. School officials may search a student based on a tip given to them by a police officer and/or police dispatch.

4. However, information given to school officials from a police officer on campus is tainted and does not give school officials a reasonable basis to search a student.

This timely appeal followed.

## II. *STANDARD OF REVIEW*

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. . . . Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations, some quotation signals, and some ellipsis points omitted). Accordingly, "[w]e review the circuit court's ruling on a motion to

suppress *de novo* to determine whether the ruling was 'right' or 'wrong.' " §*Id.* (citations and some quotation signals omitted). *State v. Locquiao,* 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002) (quoting *State v. Poaipuni,* 98 Hawai'i 387, 392, 49 P.3d 353, 358 (2002)).

### III. *DISCUSSION*

#### A. *Appellate Jurisdiction*

▮▮▮ Preliminarily, we note that the prosecution, in its notice of appeal, contends that this court has appellate jurisdiction under HRS § 571–54 (1993).[1] In its statement of jurisdiction, however, the prosecution cites HRS § 641–13(7) (1993).[2] With respect to jurisdiction under HRS § 641–13(7), district family court proceedings under HRS § 571–11(1) concerning juvenile law violators are considered to be noncriminal proceedings. *State v. Buckman,* 70 Haw. 328, 331, 770 P.2d 418, 420 (1989); *In re John Doe, Born on October 26, 1977,* 79 Hawai'i 265, 272, 900 P.2d 1332, 1339 (App.1995); HRS § 571–1 (1993); HRS § 571–41(f) (1993). Inasmuch as the proceeding concerning Minor is a noncriminal proceeding, the prosecution's appeal of the family court's May 9, 2003 FOF, COL,

and order is not authorized by HRS § 641–13(7).

▮▮▮ As for jurisdiction under HRS § 571–54, the reconsideration provision of HRS § 571–54 means that the right to appeal an order or decree entered in a proceeding based on HRS § 571–11(1), (2), (6), or (9) is conditioned upon the filing of a timely motion for reconsideration. *In re Jane Doe, Born on February 22, 1987,* 77 Hawai'i 109, 113, 883 P.2d 30, 34 (1994); *In re Jane Doe, Born on February 22, 1974,* 3 Haw.App. 391, 394, 651 P.2d 492, 494 (1982). In *In re Doe,* 3 Haw.App. at 394, 651 P.2d at 494, the Intermediate Court of Appeals observed that:

> *[T]he purpose of [the HRS § 571–54 motion for reconsideration] is to allow the court and the parties to make a complete record of the proceedings and to set forth in writing the findings and disposition of the family court for appeal purposes.* It requires them to focus their attention and, eventually the appellate court's attention, on the errors to be relied upon on appeal.

(Footnote omitted.) (Emphasis added.) Therefore, absent compliance with the statutory requirement of a timely motion for re-

---

1. HRS § 571–54 provides in relevant part:

   **Appeal.**

   *An interested party aggrieved by any order or decree* of the court may appeal to the supreme court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602, except as hereinafter provided. . . .

   . . . .

   *An order or decree entered in a proceeding based upon section 571–11(1) [law violator],* (2) [educational neglect, injurious behavior], (6) [consent to marriage, employment or enlistment], or (9) [Child Protective Act] *shall be subject to appeal to the supreme court only as follows:*

   Within twenty days from the date of the entry of any such order or decree, *any party directly affected thereby may file a motion for a reconsideration of the facts involved.* The motion and any supporting affidavit shall set forth the grounds on which a reconsideration is requested and shall be sworn to by the movant or the movant's representative. The judge shall hold a hearing on the motion, affording to all parties concerned the full right of representation by counsel and presentation of relevant evidence. The findings of the judge upon the hearing of the motion and the judge's determi-

   nation and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a result of the hearing on the motion shall be set forth in writing and signed by the judge. Any party deeming oneself aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the supreme court upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602[ ]. . . .
   (Emphases added.)

2. HRS § 641–13(7) provides:

   **By State in criminal cases.**

   An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:

   . . . .

   (7) From a pretrial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal[.]

consideration, an order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) is not appealable and the appellate court lacks jurisdiction. *In re Doe,* 77 Hawai'i at 113–14, 883 P.2d at 34–35; *In re Doe,* 3 Haw.App. at 394, 651 P.2d at 494.

On the other hand, HRS § 571–54 authorizes the prosecution to appeal the family court's May 9, 2003 FOF, COL, and order granting Minor's motion to suppress evidence. Minor's case is a juvenile law violator proceeding based on HRS § 571–11(1), the May 9, 2003 order is an order entered in a proceeding based on HRS § 571–11(1) and the State is an interested party aggrieved by the May 9, 2003 order. However, the prosecution appealed the May 9, 2003 order without filing a motion for reconsideration of the order pursuant to HRS § 571–54.

Nevertheless, in past appeals, the Kaua'i County prosecutor has, as in the instant case, appealed family court pretrial suppression orders entered in HRS § 571–11(1) juvenile law violator proceedings without filing motions for reconsideration under HRS § 571–54. *See, e.g., In re John Doe, Born on April 13, 1982,* 96 Hawai'i 217, 30 P.3d 231 (2001) (state's appeal of pretrial order suppressing breath test result in law violator proceeding alleging violation of HRS § 291–4.3). The appeals were decided by this court on the merits, and the opinions have not mentioned the statutory basis for the appeal or discussed the propriety of appealing without having filed a motion for reconsideration. In the aforementioned appeals, the suppression orders included the family court's findings of fact and conclusions of law on the suppression issues. Furthermore, (1) the suppression order appealed in the instant case likewise includes the family court findings of fact and conclusions of law on the suppression issue, and (2) the arguments supporting and opposing suppression are set forth in Minor's motion to suppress and in the prosecution's memorandum in opposition to the motion. Accordingly, inasmuch as (1) the motion, the opposing memorandum, the transcript from the March 12, 2003 suppression hearing, and the family court's May 9, 2003 FOF, COL, and order appear to amount to the parties' and the family court's complete record of the suppression matter, and (2) neither Minor

nor the prosecution assert on appeal that the purpose of the HRS § 571–54 motion for reconsideration provision has been violated, or any other appellate jurisdiction issues, we choose to address the merits of the instant appeal. We, therefore, turn to the prosecution's contentions raised on appeal.

### B. *Merits of the Instant Appeal*

In *In re Jane Doe, Born on May 5, 1977,* 77 Hawai'i 435, 436–37, 887 P.2d 645, 646–47 (1994) [hereinafter, *Doe*], this court "explicitly adopt[ed]" the standards set out in *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), governing search of a student by a school official:

> (1) children in school have legitimate expectations of privacy that are protected by article I, section 7 of the Hawai'i Constitution and the fourth amendment to the United States Constitution; (2) public school officials act as representatives of government and, consequently, must comply with article I, section 7 of the Hawai'i Constitution and the fourth amendment to the United States Constitution; (3) because the warrant requirement is particularly unsuited to the school environment, in that requiring a teacher to obtain a warrant before searching a child suspected of an infraction of the school rules or of the criminal law would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools, public school officials do not need search warrants or probable cause to search or seize evidence from students under their authority; *(4) searches or seizures in the school context must be reasonable under all the circumstances and must be (a) justified at their inception and (b) reasonably related in scope to the circumstances which justified the interference in the first place.*

(Emphasis added.) This court reasoned, *inter alia,* "that the public interest would best be served by the reasonable suspicion standard[,]" noting that it

> join[ed] the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of

school children with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probably cause[.]

*Id.* at 443, 887 P.2d at 653 (quoting *T.L.O.*, 469 U.S. at 341, 105 S.Ct. 733). In addition to the *T.L.O.* standards, this court "conclude[d] that 'individualized suspicion' is a necessary element in determining reasonableness" where there is a severe violation of a subjective expectation of privacy, such as emptying the contents of a purse. *Id.* at 445, 887 P.2d at 655.

■ As previously indicated, the prosecution contends that: (1) the family court erred in concluding that the anonymous Crime Stoppers' tip was tainted and could not form the basis of reasonable suspicion to search Minor; and (2) school officials had reasonable suspicion to search Minor based, *inter alia*, on the anonymous Crime Stoppers' tip. In support of its first contention, the prosecution asserts that "[t]here is no authority for the trial court's distinction between Crimestoppers' tips that come from regular-duty police officers and those that come from school police officers." The prosecution adds:

Although the Hawaii appellate courts have not addressed this issue, the California and Illinois Supreme Courts have held that school searches by campus police officers are subject to the reasonable suspicion standard, rejecting a distinction between searches by campus police officers and school officials, a distinction urged by [Minor] in this case.

Minor, on the other hand, urges that "Officer Ozaki's involvement and employment of the school to conduct a search rendered the search of [Minor] a police search, which required evidence of probable cause." Moreover, "school officials acted as agents of the police when they searched [Minor] on school grounds based on the anonymous tip, relayed by Officer Ozaki, which lacked either reasonable suspicion or probable cause."

■ We concur with Minor. Even assuming the Crime Stoppers' tip was not "tainted" as a result of being relayed to school officials via Officer Ozaki, the anonymous tip failed to provide even reasonable suspicion, much less probable cause, to justify the search of Minor. As stated in *T.L.O.*, 469 U.S. at 341–42, 105 S.Ct. 733:

Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," *Terry v. Ohio*, 392 U.S. [1,] 20, 88 S.Ct. [1868,] 1879, 20 L.Ed.2d 889 [ (1968) ]; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," *ibid.* *Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.* Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

(Footnotes omitted.) (Emphasis added.) (Ellipsis points in original.)

Based on the record, we cannot conclude that the anonymous Crime Stoppers' tip served as reasonable grounds for suspecting that the search of Minor would turn up evidence of contraband. *T.L.O.*, 469 U.S. at 342, 105 S.Ct. 733. Although Hawai'i courts have not addressed the standard for determining the sufficiency of an anonymous tip to justify a search in the school context, "[b]oth this court and the United States Supreme Court have placed constraints on police officers' ability to act on an anonymous tip" in conducting an investigative, or "*Terry*," stop. *State v. Prendergast*, 103 Hawai'i 451, 454, 83 P.3d 714, 717 (2004).

The United States Supreme Court recently addressed the constitutionality of an investigatory stop and frisk based on an anonymous tip in *Florida v. J.L.*, 529 U.S. 266, 268, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In that case, the substance of the tip was that a

young black male, wearing a plaid shirt, was standing at a particular bus stop and was carrying a gun. *Id.* Police officers went to the bus stop and saw three black males, one of whom was wearing a plaid shirt. *Id.* Apart from the tip, the officers did not have any reason to suspect any of the three of illegal conduct. *Id.* The officers did not see a gun and did not notice anything out of the ordinary. *Id.* One of the officers approached the defendant and, upon frisking him, recovered a gun. *Id.*

The *J.L.* court held that, inasmuch as the anonymous tip did not contain sufficient indicia of reliability, the stop and frisk of the defendant was not justified. *Id.* at 271, 120 S.Ct. 1375. Expressing its concerns in relying on anonymous tips, the Court stated:

> In the instant case, the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, *see Adams v. Williams,* 407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), *"an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,"* *Alabama v. White,* 496 U.S. [325], 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 *[ (1990) ].* *As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop."* *Id.,* at 327, 110 S.Ct. 2412, 110 L.Ed.2d 301.

*Id.* at 270, 120 S.Ct. 1375 (emphasis added).

The *J.L.* court pointed out that the anonymous call did not provide any predictive information regarding the subject's activities, such that the police officers did not have any basis on which to judge the informant's credibility. *Id.* at 271, 120 S.Ct. 1375. Notwithstanding that the caller identified a determinate person and location, the Court stated:

> [a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense:

It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. *The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.* *Cf.* 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed.1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to the likelihood of criminal activity, which is central in anonymous-tip cases).

*Id.* at 272, 120 S.Ct. 1375 (emphasis added). The Court also rejected the argument that, because firearms are extremely dangerous, any tip regarding firearms ought to give rise to an exception to the warrant requirement. *Id.* The Court indicated, however, that:

> The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk. *Nor do we hold that public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished, such as airports and schools, cannot conduct protective searches on the basis of information insufficient to justify searches elsewhere.*

*Id.* at 273–74, 120 S.Ct. 1375 (emphasis added) (citations omitted).

In *Prendergast,* this court recently addressed the constitutionality of an investigative stop of an automobile based on an anonymous tip of reckless driving. 103 Hawai'i at 452, 83 P.3d at 715. The substance of the anonymous tip in *Prendergast* was that a silver Honda Accord with license plate number EGN 656 had crossed over the center line on Honoapi'lani Highway in Maui. *Id.* The caller, who identified himself as Daniel Gilbert, reported that the Accord had almost caused several head-on collisions and had

nearly hit a guardrail. *Id.* at 452–53, 83 P.3d at 715–16. The caller advised the dispatcher that the Accord had turned on to North Kīhei Road, and the dispatcher relayed this information to Maui Police Department Officer Gordon Sagun. *Id.* at 453, 83 P.3d at 716.

While traveling north on North Kīhei Road, Officer Sagun observed an Accord matching the caller's description traveling south on North Kīhei Road. *Id.* Officer Sagun did not personally observe the Accord moving erratically, but upon turning around pulled the Accord over. *Id.* The prosecution subsequently charged the driver, Prendergast, with driving under the influence of intoxicating liquor, in violation of HRS § 291–4(a)(1) (Supp.2000) and reckless driving of a vehicle, in violation of HRS § 291–2 (Supp. 2000). *Id.* The district court denied Prendergast's motion to suppress evidence recovered from the warrantless search and seizure of his person and property. *Id.*

On appeal, this court held that the anonymous tip was sufficiently reliable to justify an investigatory stop. *Id.* at 460, 83 P.3d at 723. In distinguishing the case from *J.L.*, this court pointed to the reliability of the tip as well as the imminence of harm. *Id.* With regard to the former, the *Prendergast* court stated:

> The United States Supreme Court placed great emphasis on the unreliability of the tip in *J.L.; consequently, the reliability of the tip is a predominant factor in our examination of the totality of the circumstances regarding the constitutionality of Officer Sagun's investigative stop.* We believe that the reliability of the tip in the instant case is the dispositive factor in distinguishing this case from *J.L.*
>
> The basis for an informant's knowledge in a reckless driving case is clear, whereas the basis for the informant's knowledge in *J.L.* was not. An intoxicated driver's reckless conduct is an open and obvious danger observable by anyone nearby; we need not guess at the basis of an informant's knowledge, because this knowledge clearly derives from personal observations. As Vermont's Justice Skoglund stated in her concurrence in [*State v.*] *Boyea* [, 171

Vt. 401, 765 A.2d 862 (2000) ], this case is distinguishable from *J.L.* because the informant here reported "a crime in progress, carried out in public, identifiable and observable by anyone in sight of its commission." *Boyea,* 765 A.2d at 875 (emphasis omitted from original).

In the instant case, the anonymous informant who reported Prendergast's reckless driving gave a contemporaneous account of Prendergast's criminal activity. The informant provided the 9–1–1 operator with the make, model, color, license plate number, location, and direction of Prendergast's vehicle. The informant provided information that was firmly rooted in time and place and based on firsthand observations of criminal activity. Consequently, when examining the totality of circumstances in this case, *we hold that Officer Sagun had a reasonable suspicion, based on specific and articulable facts, that Prendergast was engaged in criminal activity.*

*Id.* at 460–61, 83 P.3d at 723–24 (emphases added).

▪▪▪▪ "[I]t is axiomatic that minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Doe,* 77 Hawai'i at 439, 887 P.2d at 649 (brackets, internal quotation marks, and citation omitted). As previously indicated, "the fourth amendment's protection, which only applies to governmental action, applies to searches conducted by public school officials who act as representatives of the state." *Id.* (citations omitted). Notwithstanding that neither *J.L.* nor *Prendergast* dealt with the sufficiency of an anonymous tip in the school context, their teachings are instructive. Specifically, both cases underscore the importance of the reliability of an anonymous tip in establishing reasonable suspicion to justify an investigative stop. *See J.L.,* 529 U.S. at 272, 120 S.Ct. 1375; *Prendergast,* 103 Hawai'i at 460, 83 P.3d at 723.

In the present matter, the entire substance of the anonymous Crime Stoppers' tip, as conveyed to Ayre, was that "[Minor] had marijuana and was selling it on campus." Officer Ozaki did not inform Ayre, nor was Ayre aware, of *any* of the circumstances

under which the tip came in other than it being a Crime Stoppers' tip. Therefore, school officials did not know, *inter alia*, the identity or status (e.g., student as opposed to adult citizen) of the informant, the time the tip came in, or the basis, if any, for the informant's knowledge. In other words, the anonymous tip bore no indicia of reliability. Furthermore, although the tip identified Minor, "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272, 120 S.Ct. 1375; *cf. State v. Detroy*, 102 Hawai'i 13, 19, 72 P.3d 485, 491 (2003). Consequently, under the circumstances of the present case, we believe, albeit for different reasons than the family court, that the anonymous tip could not form the basis of reasonable suspicion to search Minor.

The prosecution cites *In re L.A.*, 270 Kan. 879, 21 P.3d 952 (2001), to argue that Ayre properly relied on the information contained in the Crime Stoppers' tip in forming reasonable suspicion to search Minor. *L.A.*, however, is distinguishable on its facts inasmuch as it involved a more specific tip, by a student, to the school's Crime Stoppers' organizer (the school librarian), as opposed to an anonymous tip, the circumstances of which are completely unknown, to a non-school based Crime Stoppers' unit.[3] The prosecution's reliance on *L.A.* is, therefore, misplaced.

The prosecution next cites *State v. McKinnon*, 88 Wash.2d 75, 558 P.2d 781 (1977), to argue that the search of Minor was supported by reasonable suspicion. In *McKinnon*, 558 P.2d at 784–85, the Washington Supreme Court enunciated the following factors to consider to determine whether school officials had reasonable grounds to search a minor:

> The factors to be judged in determining whether the school official had reasonable grounds [to conduct a search of a student's person] are the child's age, history, and school record, the prevalence and serious-

ness of the problem in the school to which the search was directed, the exigency to make the search without delay, and the probative value and reliability of the information used as a justification for the search.

(Citations omitted.)

Based on *McKinnon*, the prosecution argues:

> Applying the *McKinnon* factors to the facts of the present case, [Minor] has a history of running away from school officials during attempts to search him. Also, on the date of the incident, [Minor] was truant. In addition, it is important to note that in *Jane Doe*, students were smoking marijuana adjacent to Kapa'a High School, the same school at which [Minor] possessed marijuana. This shows that marijuana use by students may be a significant problem for the school. Also, the exigency of the search was evident from the fact that [Minor] had just returned from off-campus and the Crimestoppers' tip was that he had marijuana and was selling it on campus. [Minor] could have easily left campus again to dispose of the marijuana or disposed of it in a bathroom on campus.

> Although [Minor] may argue that the Crimestoppers' tip is not highly reliable, in light of all of these facts, especially [Minor]'s history of evading school security, this court should conclude that the search of [Minor]'s person was supported by a reasonable suspicion. Furthermore, that the Crimestoppers' tip identified [Minor] provides sufficient basis for an individualized suspicion.

We disagree.

*McKinnon* was decided in 1977, eight years prior to the United States Supreme Court's decision in *T.L.O.* Notwithstanding that the Washington Court of Appeals upheld the *McKinnon* test as consistent with *T.L.O.*, *see State v. Brooks*, 43 Wash.App. 560, 718 P.2d 837, 841 (1986), the prosecution fails to

---

**3.** In *L.A.*, the assistant vice principal received information from the school Crime Stoppers' organizer that L.A. possessed marijuana concealed in the headband of his baseball cap. 21 P.3d at 955. Based on this information, the assistant vice principal instructed a school security guard

to bring L.A. and his baseball cap to her office, after which a search of L.A. produced contraband. *Id.* The Kansas Supreme Court held that school officials had reasonable suspicion to search L.A. based on the student tip. *Id.* at 959.

provide any compelling reasons for engrafting the *McKinnon* test onto Hawaii's search and seizure jurisprudence. Regardless, even applying, for the sake of argument, the *McKinnon* factors to the instant case, we are still not persuaded that school officials had reasonable suspicion to search Minor. Whether or not Minor had "a history of running away from school officials during attempts to search him" or was truant prior to the search, the remaining *McKinnon* factors plainly weigh against a finding of reasonable suspicion.

 Initially, we note that there is no evidence in the record to support the prosecution's suggestion "that marijuana use by students may be a significant problem for the school." [4] This court is, therefore, unable to evaluate "the prevalence and seriousness of the problem in the school to which the search was directed[.]" *McKinnon*, 558 P.2d at 785. As for the prosecution's claim of exigency to search Minor, we believe that, in view of the unreliability of the Crime Stoppers' tip as discussed in detail *supra*, the record fails to reflect exigent circumstances. For the same reason, the last *McKinnon* factor ("the probative value and reliability of the information used as a justification for the search") weighs against a finding of reasonable suspicion. Consequently, the prosecution's reliance upon *McKinnon* is unavailing.[5]

## IV. *CONCLUSION*

For the foregoing reasons, we hold that, inasmuch as the search of Minor was not "justified at its inception," *Doe*, 77 Hawai'i at 442, 887 P.2d at 652, and was not, therefore, reasonable under all of the circumstances,

the family court correctly granted Minor's motion to suppress. We, therefore, affirm the family court's May 9, 2003 FOF, COL, and order granting Minor's motion to suppress items of evidence.

---

4. Indeed, the only "evidence" cited by the prosecution on this point is the fact that *Doe*, which was decided nearly 10 years ago in 1994, involved the same high school as the instant case.

5. Citing *In re D.E.M.*, 727 A.2d 570 (Pa.Super.Ct.1999), the prosecution argues for the first time on appeal that "Ayre properly detained [Minor] in Principal Youn's office, even if she did not have a reasonable suspicion to search Minor at the outset of his detainment." Inasmuch as the prosecution failed to raise this argument before the family court, we deem it waived. *See State v. Ildefonso*, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) ("Our review of the record reveals that [the defendant] did not raise this argu-

ment at trial, and thus it is deemed to have been waived."); *State v. Hoglund*, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal.").