[Nos. 28249-0-III; 28251-1-III. Division Three. October 12, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSHUA MICHAEL BROWN, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. TAYLOR CLAYTON DUKE, *Appellant*.

*Susan M. Gasch* (of *Gasch Law Office*) for appellant Brown.

*Janet G. Gemberling* and *Julia Anne Dooris* (of *Gemberling & Dooris PS*), for appellant Duke.

*Angus Lee*, *Prosecuting Attorney*, and *Carole L. Highland* and *Karen A. Horowitz, Deputies*, for respondent.

¶1 SWEENEY, J. — We have consolidated these cases for purposes of this opinion since both appeals are based on the same facts and raise mostly the same assignments of error. RAP 3.3(b). A juvenile court commissioner concluded Joshua Brown was guilty of two counts of theft of a firearm, one count each of juvenile in possession of a firearm, possession of a firearm or other dangerous weapon on school facilities, and second degree vehicle prowling. The same commissioner concluded Taylor Duke was guilty of two counts of theft of a firearm and one count each of second degree vehicle prowling, juvenile in possession of a firearm, and possession of a firearm or other dangerous weapon on school facilities. The juveniles appeal those conclusions. The juvenile court made a threshold ruling that the search of a car here was justified by the so-called school search exception to the general requirement of a search warrant. We agree with that ruling, hold that it is dispositive of most of the juveniles' arguments and, therefore, affirm the adjudications.

## FACTS

¶2 The essential facts here come from unchallenged findings of fact.

¶3 Teddi Isherwood's teenage son, Taylor Duke, did not come home one night. Ms. Isherwood reported him as a runaway and went to his high school the following morning to look for him. She told Assistant Principal Abe Ramirez that her son had been with his friend, Joshua Brown, the night before and that Mr. Brown's Ford Bronco was in the school's parking lot.

¶4 Mr. Ramirez did not find Mr. Duke or Mr. Brown in their classes. He then contacted the high school's resource officer, police officer Ramon Lopez, for help. The two of them checked Mr. Brown's Bronco and found both boys asleep inside. Mr. Ramirez knocked on a window to wake Mr. Brown. Both boys woke up and got out of the Bronco. Officer Lopez saw a knife on the floor behind the front passenger seat as Mr. Duke climbed out of the Bronco. The principal told the boys that they were truant and that Ms. Isherwood was looking for Mr. Duke.

¶5 Mr. Brown was escorted to the office. Meanwhile, Mr. Ramirez talked to Ms. Isherwood and Mr. Duke and sent Mr. Duke to class. Officer Lopez then told Mr. Ramirez that he had seen a knife in Mr. Brown's Bronco. Weapons are not allowed on school grounds, and Mr. Ramirez was concerned.

¶6 Mr. Ramirez asked Mr. Brown if he could retrieve the knife. Mr. Brown said he could. Mr. Ramirez and the dean of students, Kay Sidwell, searched Mr. Brown's Bronco; Officer Lopez watched. Dean Sidwell found the knife Officer Lopez had seen. And Mr. Ramirez found a shotgun and a .22 pistol with bullets in a case in the Bronco's cargo area. They handed the weapons to Officer Lopez.

¶7 The firearms had been reported stolen. Officer Lopez arrested Mr. Brown for possessing firearms and read him

his *Miranda*[1] rights. Mr. Brown said he understood his rights and did not want to talk about the firearms. Another officer transported Mr. Brown to the police department.

¶8 Two hours after the arrest, Officer Scott Ent again read Mr. Brown his *Miranda* rights. Officer Ent was investigating a vehicle prowl. Mr. Brown again said he understood his rights. And he agreed to talk to Officer Ent about the vehicle prowl. He admitted that he and Mr. Duke had stolen firearms from a truck.

¶9 Officer Lopez arrested Mr. Duke following Mr. Brown's confession and transported him to the police department. Officer Ent read Mr. Duke his *Miranda* rights. Mr. Duke waived those rights and admitted that he helped Mr. Brown steal the firearms.

¶10 The State charged Mr. Brown with two counts of theft of a firearm and one count each of juvenile in possession of a firearm, possession of a firearm or other dangerous weapon on school facilities, second degree vehicle prowling, and minor in possession of or consuming alcohol. He moved to suppress the physical evidence and his confession. He argued that the search of his car was unlawful and his confession was coerced and obtained in violation of his *Miranda* rights. The juvenile court denied his motions and, after a hearing, concluded Mr. Brown was guilty of all charges except for minor in possession of or consuming alcohol.

¶11 The State also charged Mr. Duke with two counts of theft of a firearm and one count each of juvenile in possession of a firearm, possession of a firearm or other dangerous weapon on school facilities, and second degree vehicle prowling. He moved to suppress the firearms and his confession. And he argued that his confession was the fruit of an unlawful search of Mr. Brown's car. The juvenile court denied his motions and concluded he was guilty of all charges.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## DISCUSSION

SCHOOL SEARCH EXCEPTION TO THE WARRANT REQUIREMENT

¶12 Mr. Brown and Mr. Duke contend the search here was not justified under the school search exception to the general requirement for a warrant because there were no exigent circumstances. They also contend that the search went beyond its original justification—the knife—even if the search was justified.

¶13 The findings here are unchallenged and so the question is whether they support the court's conclusion of law that the search fell within the school search exception. *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). Our review is, then, de novo. *State v. Acrey*, 148 Wn.2d 738, 745, 64 P.3d 594 (2003); *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002).

¶14 Here is what the court concluded:

> The presence of weapons in a school environment is a serious problem in schools throughout the country and has specifically impacted the Moses Lake School District (e.g., Barry Loukitas [sic]). That a Moses Lake school administrator would be concerned about the presence of weapons on the campus of a school in the Moses Lake School District is to be expected. There was an exigency in that lunch was fast approaching and students would be returning to the parking lot. A student could have removed the knife (or any other weapon) from the vehicle. The probative value and reliability of the information used to justify the search, i.e., Officer Lopez's visual observation of a weapon in Respondent Brown's vehicle, was high. Given these considerations and given the circumstances, the "school search" exception to the warrant requirement applies in this case, and the school administrators' search of Respondent Brown's vehicle was reasonable.

*State v. Brown* Clerk's Papers (BCP) at 7 (Conclusion of Law 16); *State v. Duke* Clerk's Papers (DCP) at 7 (Conclusion of Law 17).

¶15 School officials may search a student's belongings without a warrant under the "school search" exception

if the search is justified at its inception and its scope is related to the reasons justifying it. *State v. Slattery*, 56 Wn. App. 820, 823-24, 787 P.2d 932 (1990).

¶16 A search by school officials is justified at its inception if school officials have reasonable grounds for suspecting that they will find evidence that a student has violated the law or school rules. *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985); *Slattery*, 56 Wn. App. at 825. The existence of an emergency is one of a number of factors that a court considers to determine whether school officials had reasonable grounds to search; others include

> "the child's age, history, and school record, the prevalence and seriousness of the problem in the school to which the search was directed, the exigency to make the search without delay, and the probative value and reliability of the information used as a justification for the search."

*State v. Brooks*, 43 Wn. App. 560, 567-68, 718 P.2d 837 (1986) (quoting *State v. McKinnon*, 88 Wn.2d 75, 81, 558 P.2d 781 (1977)).

¶17 Mr. Brown and Mr. Duke first argue that there was no emergency sufficient to justify the school officials' warrantless search. Appellant Brown's Br. at 13; Appellant Duke's Br. at 11. The argument mischaracterizes the rationale underlying the court's conclusion that the school search exception applied: school officials have an interest in maintaining order and discipline in the school. BCP at 7 (citing *T.L.O.*, 469 U.S. at 339); DCP at 6 (same). An emergency under the school search exception is not the same as the exigent circumstances exception to the general requirement for a warrant. *See Slattery*, 56 Wn. App. at 823 (listing exceptions separately). An exigency under the school search exception is any threat to the order and discipline of a school. *McKinnon*, 88 Wn.2d at 81. An exigent circumstance under the exigent circumstances exception, however, is a true emergency. *State v. Hinshaw*, 149 Wn. App. 747, 754, 205 P.3d 178 (2009). It requires swift action

to prevent danger to life, a suspect's imminent escape, or destruction of evidence. *Id.*

¶18 The juvenile court here was not asked to and did not pass on whether the exigent circumstances exception permitted the warrantless search of Mr. Brown's Bronco. The court was asked to consider the factors necessary to decide whether school officials had reasonable grounds to search these students, i.e., the school search exception. *Brooks*, 43 Wn. App. at 568. And it did so.

¶19 This school district has had serious problems with weapons on campus in the past. *State v. Loukaitis*, 82 Wn. App. 460, 462-63, 918 P.2d 535 (1996). The boys were truant and had been in Mr. Brown's vehicle. The vehicle contained a knife. The lunch period was about to begin. And Mr. Brown agreed that school officials could enter his vehicle. Mr. Brown does not challenge these findings. He agrees that "the circumstance that justified entering Mr. Brown's car was the pocketknife earlier seen by Officer Lopez on the floorboard in the back seat area." Appellant Brown's Br. at 11. The findings support the court's conclusion that the search was justified at its inception as a school search. *T.L.O.*, 469 U.S. at 341-42. We also conclude that the exigency here—the threat a weapon posed to discipline and order—was sufficient to support a school search. *McKinnon*, 88 Wn.2d at 81.

¶20 Mr. Brown and Mr. Duke argue, alternatively, that the scope of the search, even if justified, was not reasonable. The search was prompted by the presence of a knife, so they argue that the search should have ended once the knife was recovered.

¶21 The scope of a search is reasonable "when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342. The school officials here searched only Mr. Brown's vehicle. The search was prompted by a knife on the vehicle's floorboard. BCP at 3 (Finding of Fact 15); DCP at 3 (Finding of Fact 15). Moses Lake High School

has a zero-tolerance policy for weapons, and Mr. Brown brought a weapon onto school grounds. School officials have a substantial interest in ensuring that school grounds are safe. *See Slattery*, 56 Wn. App. at 824. And, here, the decision to search Mr. Brown's vehicle for weapons was not only linked to the initial intrusion but also was not overly intrusive in light of the seriousness of Mr. Brown's infraction, bringing a weapon to a school that has no tolerance for weapons. The juvenile court, then, properly concluded that the "school search" exception applied. And it properly admitted the physical evidence seized.

## CONFESSIONS FOLLOWING THE SEARCH

¶22 Mr. Brown and Mr. Duke also contend that their confessions should be suppressed as the fruit of a poisonous tree because the search was illegal. Appellant Brown's Br. at 15-16 (citing *State v. Byers*, 88 Wn.2d 1, 9, 559 P.2d 1334 (1977), *overruled by State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984)); Appellant Duke's Br. at 13-14 (citing *Byers*, 88 Wn.2d at 9). We have already concluded that the search was proper. This derivative contention, then, also fails.

## ASSERTION OF RIGHT TO REMAIN SILENT

¶23 Mr. Brown contends that his confession should have been excluded because it followed his earlier assertion of his right to remain silent.

¶24 Whether a defendant validly waives his previously asserted right to remain silent depends on (1) whether the police scrupulously honored the defendant's right to cut off questioning, (2) whether the police continued interrogating the defendant before obtaining a waiver, (3) whether the police coerced the defendant to change his mind, and (4) whether the subsequent waiver was knowing and voluntary. *State v. Wheeler*, 108 Wn.2d 230, 238, 737 P.2d 1005 (1987).

¶25 Mr. Brown argues that the police did not scrupulously honor his right to cut off questioning and that

his subsequent waiver, therefore, was not voluntary. Appellant Brown's Br. at 18. The court concluded otherwise:

> Officer Ent gave Respondent Brown . . . a fresh set of Miranda warnings, and . . . Officer Lopez "scrupulously honored" Respondent Brown's invocation of his right to remain silent. There is no evidence that Officer Lopez attempted to question Respondent Brown prior to the time Officer Ent issued the fresh set of Miranda warnings.

BCP at 8 (Conclusion of Law 21).

> Respondent Brown freely, voluntarily, and intelligently waived his right to remain silent and thereafter provided a statement to Officer Ent.

BCP at 9 (Conclusion of Law 24).

¶26 Once a defendant invokes his right to remain silent, the police must "scrupulously honor" the defendant's right to cut off questioning by immediately ceasing the interrogation, by resuming the interrogation only after significant time has passed, and by providing a fresh set of *Miranda* warnings before resuming the interrogation. *Michigan v. Mosley*, 423 U.S. 96, 104-06, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975). Officers further "scrupulously honor" a defendant's right to cut off questioning by limiting the scope of a subsequent interrogation to a crime that was not a subject of the earlier interrogation. *Id.* at 106. We have held that limiting the scope of an interrogation to a different crime is required. *State v. Reuben*, 62 Wn. App. 620, 626, 814 P.2d 1177 (1991). But whether subsequent interrogations must be limited to a different crime is subject to some debate. *State v. Robbins*, 15 Wn. App. 108, 110, 547 P.2d 288 (1976). It is a debate that we need not resolve here.

¶27 Officer Lopez arrested Mr. Brown for firearms possession, gave Mr. Brown *Miranda* warnings, and then asked if he wanted to talk about the firearms. Mr. Brown said no. Officer Lopez did not question Mr. Brown once Mr. Brown asserted his right to remain silent:

Q. Did you ask Mr. Brown questions at the school regarding the firearms after he indicated he didn't want to talk about that?

A. Not that I can remember, no.

Q. So then the only time you had questioned Mr. Brown about the weapons was during the interview with Mr. Ent?

A. Once he gave a confession, yes.

Q. Okay. And that was after he was provided his _Miranda_ warnings and juvenile warnings by Officer Ent?

A. Yes.

_State v. Brown_ Suppl. Report of Proceedings at 74. In fact, no one questioned Mr. Brown again until two hours had passed and he had been advised of his _Miranda_ rights again:

> Approximately two hours after Officer Lopez had first read Respondent Brown his Miranda rights, Officer Scott Ent proceeded to read Respondent Brown his Miranda rights again. Thereafter, Respondent Brown signed a waiver of his right to remain silent and gave a statement in which he admitted . . . that he had stolen the guns from various vehicles.

BCP at 4 (Unchallenged Finding of Fact 24). Two hours is a sufficient period of time. _Mosley,_ 423 U.S. at 104-06. And the court concluded as much:

> Based on the totality of the circumstances, the Court finds that sufficient time passed between Respondent Brown's invocation of his right to remain silent regarding the guns found in his vehicle and the re-questioning by Officer Ent. This was not a case where the police made repeated efforts to "wear down" Respondent Brown.

BCP at 8 (Conclusion of Law 23). Next, Officer Ent asked Mr. Brown about a vehicle prowl he was investigating, not about firearms possession. The juvenile court properly concluded that the police officers here scrupulously honored Mr. Brown's right to cut off questioning.

WAIVER OF RIGHT TO REMAIN SILENT—MR. BROWN

¶28 Mr. Brown argues that he did not voluntarily waive his right to remain silent. A waiver of the right to remain silent must be voluntary to be valid. *Wheeler*, 108 Wn.2d at 237-38. To be voluntary, a defendant's waiver must be the product of rational intellect and free will. *State v. Rupe*, 101 Wn.2d 664, 679, 683 P.2d 571 (1984). In determining voluntariness, we evaluate the totality of the circumstances, including Mr. Brown's physical and mental condition, his experience, and the conduct of the police. *Id.*

¶29 We have concluded that the police officers honored Mr. Brown's exercise of his right to remain silent and to cut off questioning. And Mr. Brown has experience with the criminal justice system and appeared to understand and of course exercised his right to remain silent. Again, the court's findings are helpful:

> 20. After confirming that the guns had been reported as being stolen, Officer Lopez placed Respondent Brown under arrest. Officer Lopez read Respondent Brown his Miranda rights, including the juvenile provisions. Officer Lopez asked Respondent Brown if he understood his rights. Respondent Brown indicated he understood his rights.
>
> 21. Officer Lopez asked Respondent Brown if he wanted to talk about the guns. Respondent Brown affirmatively stated that he did not wish to speak about the guns.
>
> . . . .
>
> 24. Approximately two hours after Officer Lopez had first read Respondent Brown his Miranda rights, Officer Scott Ent proceeded to read Respondent Brown his Miranda rights again. Thereafter, Respondent Brown signed a waiver of his right to remain silent and gave a statement in which he admitted . . . that he had stolen the guns from various vehicles.

BCP at 3-4. "An express written . . . statement of waiver of the right to remain silent . . . is usually strong proof of the validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). Here, the juvenile court's findings support its conclusion that Mr.

Brown voluntarily waived his right to remain silent. Mr. Brown's confession, then, was properly admitted.

¶30 We affirm the adjudications in both cases.

KULIK, C.J., and SIDDOWAY, J., concur.

Review denied at 171 Wn.2d 1006 (2011).