[No. 15661-3-III.   Division Three.   July 2, 1996.]

THE STATE OF WASHINGTON, *Petitioner*, v. BARRY D. LOUKAITIS, *Respondent*.

*Duane M. Swinton* and *Witherspoon, Kelley, Davenport & Toole, P.S.*; and *John D. Knodell III, Prosecuting Attorney* for Grant County, for petitioner.

*Garth L. Dano* and *Dano Law Firm,* for respondent.

SWEENEY, C.J. — In *Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 13, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986), the United States Supreme Court held that a qualified First Amendment right of access attaches to preliminary hearings. To deny that right of access a trial court must make specific findings clearly showing the need for closure. In this aggravated first degree murder case, the court closed a juvenile declination hearing just before a psychiatric expert retained by Barry D. Loukaitis was about to express opinions prepared in anticipation of that proceeding. The question presented here is whether the trial court's general conclusion that Mr. Loukaitis would be denied his Sixth Amendment right to a fair trial is sufficient to support its discretionary decision to close the hearing. We conclude that it is not and reverse the trial court's decision.

## FACTS

In February 1996, Mr. Loukaitis was charged with three

counts of aggravated first degree murder and one count of first degree assault following a highly publicized shooting at Frontier Junior High School in Moses Lake, Washington. Mr. Loukaitis is 15 years old. During a scheduled declination hearing, he called Dr. Julia Moore, a psychiatrist. After testifying about her background and some preliminary matters, Mr. Loukaitis asked that the proceedings be closed. He also asked that the court seal the record because it pertained to the case's "social file." As a basis for closing the hearing, lawyers for Mr. Loukaitis said that Dr. Moore intended to explain her diagnosis, discuss information she received from Mr. Loukaitis to support her opinion, describe her examination of Mr. Loukaitis, and express opinions on how a mental disorder may affect Mr. Loukaitis's conduct or thinking. The State, members of the public, and the press objected to the court's order closing the hearing.

The court ordered the proceedings closed on Thursday, April 18, 1996. It gave the following reasons:

(1) The declination proceeding was jurisdictional and a preliminary hearing, not a trial;

(2) If trial were held, a substantial issue would be made of the mental condition of Mr. Loukaitis and at that time information regarding his mental condition would be more detailed;

(3) The information that the psychiatrist would testify about related to the "social file" which in juvenile proceedings is confidential. The court relied on *State v. Holland*, 30 Wn. App. 366, 635 P.2d 142 (1981), *aff'd*, 98 Wn.2d 507, 656 P.2d 1056 (1983);

(4) By allowing the mental health testimony to be presented at a public hearing, the court would run the risk of "poisoning the trial process"; and

(5) No lesser intrusive alternatives are available. The court recessed for five minutes to allow the parties to consider alternatives to closure. The State suggested a gag order on those in attendance, allowing only the victims' families to attend, or allowing Dr. Moore to state her diagnosis, general

basis for her diagnosis and then seal only the results of her examination. The court rejected the State's proposed alternatives.

The court announced that it would reopen the proceedings at the earliest possible time.

The following morning, Friday, April 19, 1996, Cowles Publishing Company moved this court for discretionary review. The State joined with Cowles Publishing Company in its motion. A commissioner of this court stayed the proceedings, pending supplemental briefing and further proceedings in this court. After the commissioner's decision to stay proceedings, the trial court entered additional oral findings to support its ruling closing the hearing. It then considered the five factors required by *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982), and said that the closure occurred because:

(1) There was a need to protect psychiatric and other mental health evidence from statewide dissemination since Mr. Loukaitis's mental condition would probably be the basis of the ultimate issue at trial;

(2) Everyone present at the declination hearing had an opportunity to object;

(3) The court and the attorneys could not come up with other alternatives to closure which would be less restrictive;

(4) The court weighed the right to a fair trial and the interest of the public to disclosure;

(5) "[I]t would be . . . possible, within the confines of this hearing, for the witness to present her opinion and her findings by written report, which would be filed in the social file, and if considered by the Court under the *Holland* case, would be transported to the legal file and sealed. The practical effect of which would be exactly the same as the Court's ruling"; and

(6) The court limited closure to Dr. Moore's testimony about Mr. Loukaitis.

We accepted discretionary review. RAP 2.3(b).

## DISCUSSION

■ Standard of Review. The standard of review here is abuse of discretion. *Coggle v. Snow*, 56 Wn. App. 499, 506-07, 784 P.2d 554 (1990). To simply say that the standard of review is abuse of discretion does not, however, adequately describe our role in reviewing this decision, which pits two fundamental legal rights against each other. The public (and the defendant) have a right to open legal proceedings. And the defendant has a right to a fair trial. Judge Horowitz explained our role in *In re Burtts*, 12 Wn. App. 564, 570, 530 P.2d 709, *review denied*, 85 Wn.2d 1014 (1975): "Moreover, when a juvenile court exercises judicial power, including the exercise of discretion, like other courts it is subject to law-oriented reasons, precedents, legal concepts and principles, as well as traditional legal logic characteristic of the American legal system."

With this standard in mind, we review the trial court's decision. We then review this exercise of discretion in light of the limited factual record and the legal concepts and principles set out in two cases: *Ishikawa*, 97 Wn.2d 30, and *Press-Enterprise*, 478 U.S. 1.

Public Access to Juvenile Proceedings. Mr. Loukaitis argues, *Ishikawa* notwithstanding, that this state has a general policy of restricting access to juvenile proceedings. And we should, therefore, limit our state constitutional right to access to criminal proceedings here.

He notes that other statutes require closing or sealing other juvenile proceedings and records. *See, e.g.*, RCW 13.34.110 (excluding public from dependency hearings); RCW 13.32A.200 (excluding public from hearings under the Family Reconciliation Act); RCW 13.50 (restricting access to juvenile court records). He also relies on *In re Lewis*, 51 Wn.2d 193, 316 P.2d 907 (1957). There, the court affirmed closure of a delinquency proceeding noting that "[t]he purpose of excluding the public from proceedings

such as these is, of course, to protect the child from notoriety and its ill effects. . . . [A] juvenile court hearing is not a criminal proceeding and therefore is not subject to those limitations which are designed to protect persons accused of a crime . . . ." *Id.* at 198, 199-200.

*Lewis* is distinguishable because it was a delinquency proceeding under former RCW 13.04.090. *See* former RCW 13.04.090 *repealed by* Laws of 1961, ch. 302, § 17. Here, the declination hearing statute differs from the statute in *Lewis*; it presumes public access. The statute provides that "[t]he general public and press shall be permitted to attend any hearing unless the court, for good cause, orders a particular hearing to be closed." RCW 13.40.140(6). The statute then goes on and specifically provides that "[t]he presumption shall be that all such hearings will be open." RCW 13.40.140(6).

In sum, the public has the same right to access in a declination hearing as in other pretrial criminal proceedings, subject to closure for good cause.

Closure of Proceedings. *Ishikawa* outlines five factors the trial court must consider to determine whether a hearing can be closed: (1) the need for closure and sealing; (2) the opportunity to object to closure; (3) an analysis of the alternatives to closure; (4) weighing the competing interests of closure to the public's right to access; and (5) limitations in both the application and duration of the order of closure should closure be ordered. *Ishikawa*, 97 Wn.2d at 37-39. The first factor is dispositive.

Mr. Loukaitis urges four different grounds for closing the hearing: (1) the opinions of his psychiatric experts relate to his "social file" which by statute is closed to the public; (2) embarrassment to Mr. Loukaitis and his family if information from those psychiatric experts becomes public; (3) he will be denied his right to a fair declination hearing; and, finally, (4) he will be denied a right to a fair trial. We address each argument in order.

## Opinions Protected as Part of a Social File

Juvenile records are divided into the "official juvenile court file" (RCW 13.50.050(2)) and the social file (RCW 13.50.010(1)(c)). The official juvenile court file is the "legal file of the juvenile court containing the petition or information, motions, memorandums, briefs, findings of the court, and court orders." RCW 13.50.010(1)(b). The " '[s]ocial file' means the juvenile court file containing the records and reports of the probation counselor." RCW 13.50.010(1)(c).

■ Mr. Loukaitis argues that the opinions of his experts should be included within the definition of a juvenile "social file." He relies on *State v. Holland*, 30 Wn. App. 366, 635 P.2d 142 (1981), *aff'd*, 98 Wn.2d 507, 656 P.2d 1056 (1983). *Holland* is distinguishable. In *Holland*, the court appointed a probation counselor to act as a juvenile's caseworker. It ordered the caseworker to arrange for a mental health evaluation of Mr. Holland. *Holland*, 30 Wn. App. at 368. The State attempted to introduce the results of that evaluation during Mr. Holland's trial. The court sealed the social file and excluded the evaluations from the juvenile court file. The reviewing court agreed with the trial court's action. *Holland*, 30 Wn. App. at 382. Here, Mr. Loukaitis will introduce testimony from his own expert witnesses, not a probation counselor or a mental health professional supplying opinions pursuant to court order. The statute clearly limits the confidentiality to records and reports of a probation counselor. RCW 13.50.010(1)(c); .050(3). Information from the juvenile's own mental health expert is not part of that social file.

## Family Right to Privacy

■ Mr. Loukaitis next argues that a public declination hearing would intrude upon his and his family's right to privacy. He, however, does not cite any authority for this proposition. No doubt an aggravated first degree murder case, particularly under these circumstances, can be expected to bring intense public and media scrutiny, and

along with it a level of embarrassment for the family of the one accused. To the extent that family history and background bears upon questions of Mr. Loukaitis's mental status, it is not subject to a right of privacy. And avoiding embarrassment to the Loukaitis family would not outweigh the public's right to access to this judicial proceeding, in any event.

## Right to a Fair Declination Hearing

Mr. Loukaitis next argues that public disclosure would affect his right to a fair declination hearing. But exactly why this would happen is unclear. The fact finder in this declination is, of course, the judge who has access to the record, whether or not it is sealed.

## Right to a Fair Trial

■■ Mr. Loukaitis argues that he would be denied his right to a fair trial by opening the declination hearing. But *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982) requires that "the movant should state the interests or rights which give rise to that need *as specifically as possible* without endangering those interests." *Ishikawa*, 97 Wn.2d at 37 (emphasis added). That showing simply has not been made here. Other than a generalized concern that Mr. Loukaitis will be denied a fair trial, there is no showing why publication of the opinions of his retained psychiatric experts would result in the denial of a fair trial. *Ishikawa* requires a detailed explanation of why. *Ishikawa*, 97 Wn.2d at 41. That requirement is also expressed in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986). There, the Court noted:

> If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed *only if specific findings* are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by the publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

*Press-Enterprise,* 478 U.S. at 14 (emphasis added).

We agree with the observation of the trial judge here that the psychiatric testimony being offered may well bear upon the ultimate issue of fact should this case proceed to trial. But it is also true that the same expert testimony is offered in this declination hearing presumably to support Mr. Loukaitis's position that the juvenile court should retain jurisdiction. And that consideration militates in favor of an open hearing.

As Chief Justice Burger noted in his majority opinion in *Press-Enterprise,* "the preliminary hearing is often the final and most important step in the criminal proceeding." *Press-Enterprise,* 478 U.S. at 12. And so it is here. If the Grant County Juvenile Court retains jurisdiction of Mr. Loukaitis, it effectively limits his maximum term of incarceration, should he be convicted, to six years, because when he turns 21 years old the juvenile court loses jurisdiction. RCW 13.40.300. If, on the other hand, the court declines jurisdiction, Mr. Loukaitis faces a potential maximum penalty of life imprisonment without the possibility of parole. The declination proceeding then has an important, maybe even dispositive, implication. A criminal proceeding is more than just the actual trial.

Should the juvenile court retain jurisdiction, an important purpose is served by an open hearing. The public would then be privy to, and understand, the basis for the court's decision which, as we have noted, will substantially affect Mr. Loukaitis's sentence should he be found or plead guilty.

Other concerns expressed by Chief Justice Burger in his majority opinion in *Press-Enterprise* also support our conclusion here. Even from the limited record before us on this motion, it is clear that this crime has provoked "public concern, outrage, and hostility." *Press-Enterprise,* 478 U.S. at 13. It is obvious from this record that the victims' families are very interested, not only in those legal processes which will determine guilt or innocence, but also in those which will determine whether Mr. Lou-

kaitis will be tried as an adult or as a juvenile. This information then serves a very important public purpose. "When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).

It follows then that proceedings cannot be closed unless specific, on-the-record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise*, 464 U.S. at 510. We therefore conclude that the trial court abused its discretion in closing this hearing by failing to make specific factual findings on questions of how and why an open declination hearing would prejudice Mr. Loukaitis's right to a fair trial, as required by both *Ishikawa*, 97 Wn.2d 30, and *Press-Enterprise*, 478 U.S. 1.

While this is dispositive of the appeal, we note in passing that whatever might be the prejudice attendant to publication of the opinions of Mr. Loukaitis's experts, there was little consideration on the record of alternatives, including a change of venue, change of venire, extensive voir dire, sequestration of the jury, or admonition of the jury. *See State v. Bassett*, 128 Wn.2d 612, 617, 911 P.2d 385 (1996) (listing alternatives).

The decision of the trial court closing Mr. Loukaitis's declination hearing is reversed.

THOMPSON and SCHULTHEIS, JJ., concur.