13 P.3d 244 (2000)
103 Wash.App. 549
STATE of Washington, Respondent,
v.
B.A.S., Appellant.
No. 45279-7-I.
Court of Appeals of Washington, Division 1.
November 27, 2000.
*245 Eric J. Nielsen, Nielsen Broman & Assoc. PLLC, Seattle, for Appellant.
Endel R. Kolde, Seattle, for Respondent.
AGID, C.J.
B.A.S. appeals his juvenile court conviction for possession of less than 40 grams of marijuana in violation of RCW 69.50.401(e). He alleges the court erred in refusing to suppress evidence found by a school official who ordered B.A.S. to empty his pockets because he believed B.A.S. had violated the school's closed campus rule. Because the school official lacked reasonable grounds for searching B.A.S., we reverse the conviction.

FACTS[1]
B.A.S. attends Auburn Riverside High School, which has a closed campus policy. This policy prohibits students from leaving campus during school hours without permission from the school. The school's parking lot is considered off campus, and the school has a policy that any student seen in the parking lot without permission or a valid excuse is subject to search.[2] The purpose of the policy is to promote safety by ensuring that students do not bring prohibited items, such as drugs and weapons, onto school grounds.
On November 25, 1998, David Halford, Auburn Riverside's school attendance officer, saw B.A.S. and three other boys about 20 feet from the parking lot. Halford knew that B.A.S., who was only 15 years old at the time, did not have a car and did not have permission to be in the parking lot. According to Halford, as he approached the group he noticed that B.A.S.'s pants had a one- to two-inch wet ring around the bottom, which suggested to Halford that B.A.S. had been in a nearby field because the campus area was dry and it had not been raining. He also noticed that B.A.S. and his companions looked surprised to see him. Based on B.A.S.'s proximity to the parking lot, his wet pant legs, and his startled response when he saw Halford, he concluded that B.A.S. had been off campus.
Halford asked the four boys to go to his office so he could talk to them individually. Before talking to B.A.S., Halford checked the school's attendance records and learned that B.A.S. was missing class. He then invoked the school's search policy and asked B.A.S. to empty his pockets to ensure that he had not brought any prohibited items onto the school's campus. B.A.S. initially refused, but complied after Halford threatened to call his father. When B.A.S. pulled a black case out of his pocket and put it on the table, Halford opened the case and found several plastic baggies filled with a substance he suspected was marijuana. Later testing confirmed that Halford's suspicion was correct.
*246 After B.A.S. was charged, the court held a CrR 3.6 hearing during which B.A.S. moved to suppress the evidence from the search.[3] The commissioner denied the motion and in a bench trial found B.A.S. guilty as charged.

DISCUSSION
We hold that Halford's suspicion that B.A.S. had violated the closed campus rule did not provide reasonable grounds for concluding that a search would reveal evidence of that or additional violations of law or school rules. The search was therefore illegal, and we reverse B.A.S.'s conviction.
The Fourth Amendment to the U.S. Constitution and the Washington Constitution, article I, section 7, protect people from unreasonable searches and seizures and invasions of privacy.[4] In New Jersey v. T.L.O.,[5] the United States Supreme Court held that school authorities may conduct a warrantless search of a student without probable cause if the search is reasonable under all the circumstances. A search is reasonable if it is: (1) justified at its inception; and (2) reasonably related in scope to the circumstances that justified the interference in the first place.[6] A search is justified at its inception only when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.[7] Washington courts have established the following factors as relevant in determining whether school officials had reasonable grounds for a search:
the child's age, history, and school record, the prevalence and seriousness of the problem in the school to which the search was directed, the exigency to make the search without delay, and the probative value and reliability of the information used as a justification for the search.[8]
Halford's search of B.A.S. does not pass muster under these standards.
Halford searched B.A.S. for contraband because he believed B.A.S. had violated the school's closed campus policy and because Auburn Riverside has a policy "that all students seen in the parking lot area without permission are subject to search." But these grounds did not provide a reasonable basis for suspecting that a search would either confirm Halford's suspicion or reveal that B.A.S. committed some other offense. There must be a nexus between the item sought and the infraction under investigation.[9] Here there was no evidence in the record of a correlation between a student's violation of the closed campus policy and a likelihood he or she is bringing contraband onto campus.[10] Thus, the required nexus is absent, and we *247 reject the State's blanket supposition that "[b]y violating school rules, a student necessarily draws individualized suspicion on himself."[11] Auburn Riverside understandably has in place a system of punishment for students who go into the parking lot without permission,[12] but violating that rule without more does not warrant an automatic search.[13]
Nor does the general purpose of the search policy, without more, provide a reasonable basis for searching B.A.S. The commissioner found that the policy's purpose is "to ensure the safety of students at school and to ensure that prohibited items are not brought onto the school grounds. Prohibited items include marijuana, drugs, and weapons, among other items."[14] Halford testified that the goal of searching students who go into the parking lot during school hours is "safety." When asked the school's specific safety concerns, Halford answered: "Well, the big ones that have been happening lately, the Columbine issue, the [INAUDIBLE] and just make it a safe place for the students and the staff." The State asked Halford to elaborate, and he responded: "Well, there's always the issues [sic] of drugs, you know, that's something, that, of course, is illegal in the state of Washington and we want to enforce that." Recent events certainly justify these important concerns, but alone they cannot provide a reasonable basis for searching any student suspected of going off campus. There must be some nexus between that violation and the official's belief that a search may turn up evidence the student violated the closed campus rule, other school rules or the law.
An analysis of the remaining reasonableness factors lends further support to our conclusion that this search was not justified. While Halford stated he knew B.A.S. was only 15 and did not drive to school, that information is not relevant to any reasonable ground for searching him; rather, it only supported Halford's belief that B.A.S. did not have a valid excuse for being in the parking lot. There is no indication that B.A.S. habitually broke the law or school rules, or that he or his friends had ever brought contraband onto the school's campus. The record is also silent on whether B.A.S. had either academic or behavioral difficulties in school. In short, there was nothing about B.A.S.'s age, history or school record that justified the search. Finally, there were no exigent circumstances present here. In sum, there was no basis articulated in the record for suspecting B.A.S. was carrying proscribed items, and the search was therefore unreasonable.[15]
In State v. Brooks,[16] a post-T.L.O. school search case, we affirmed the conviction where the vice principal believed Brooks was often under the influence of drugs based on her interactions with him and similar reports from three of Brooks' teachers; the vice principal had received information from a student who had a locker near Brooks' that he was selling marijuana out of a blue metal box in another, unassigned locker; and Brooks was known to frequent a location near the school where drug trafficking commonly occurred. The substantial grounds for suspicion in Brooks are in stark contrast to the virtual absence of any reasonable *248 grounds for suspecting that B.A.S. had committed a violation.[17]
Reversed.
GROSSE, J., and COX, J., concur.
NOTES
[1] B.A.S. does not assign error to any of the commissioner's findings of fact and they are therefore verities on appeal. State v. Brooks, 43 Wash.App. 560, 564, 718 P.2d 837 (1986).
[2] Although the court's finding 6 states that the school's policy is that any student seen in the parking without permission or a valid excuse will be searched, the court later states in finding 12 that being seen in the parking lot makes a student subject to search. Testimony at trial supports the latter description. Auburn Riverside's school attendance officer testified that when a student is seen in the parking lot he or she is asked a series of questions and that "a search can be invoked, depending on what the circumstances are."
[3] A school official's demand that a student empty his or her pockets constitutes a search. See, e.g., State v. Slattery, 56 Wash.App. 820, 787 P.2d 932, review denied, 114 Wash.2d 1015, 791 P.2d 534 (1990).
[4] The Fourth Amendment to the U.S. Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The Washington Constitution does not provide students with greater protections from searches by school officials than the Fourth Amendment. Brooks, 43 Wash.App. at 568, 718 P.2d 837.
[5] 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).
[6] Id.
[7] Id. at 342, 105 S.Ct. 733.
[8] Slattery, 56 Wash.App. at 825, 787 P.2d 932 (quoting Brooks, 43 Wash.App. at 567-68, 718 P.2d 837). Although our Supreme Court first enunciated these factors in a pre-T.L.O. case, State v. McKinnon, 88 Wash.2d 75, 81, 558 P.2d 781 (1977), the express holding in that case was that a school official need only have "reasonable grounds" to search a student, and the McKinnon factors are therefore consonant with the holding in T.L.O. See Brooks, 43 Wash.App. at 567-68, 718 P.2d 837.
[9] T.L.O., 469 U.S. at 345, 105 S.Ct. 733.
[10] While there may be such evidence in documents and/or school officials' experience, the State did not present it in this case.
[11] We note that the T.L.O. Court did not consider whether individualized suspicion is an essential element of the reasonableness standard for searches by school authorities because the search involved in that case "was based upon an individualized suspicion that [T.L.O.] had violated school rules." 469 U.S. at 342 n. 8, 105 S.Ct. 733. For the same reason, the question of individualized suspicion is not before us.
[12] Halford testified that when a student is caught in the parking lot without permission or a valid excuse "it's a three-hour contingent or community service, whichever waythat would be up to the parent or the student."
[13] While the record suggests that Halford's decision to search B.A.S. was also based on the fact that B.A.S. was skipping class, that fact does not alter our analysis. Like the off-campus rule, this record does not establish a logical connection between learning a student skipped class and concluding that a search might reveal a violation of the law or other school rules.
[14] While there was no testimony or findings on the purpose of the general closed campus policy, presumably its purpose is the same.
[15] We reject the State's contention that B.A.S. consented to the search. He did not consent. Rather, he followed the directive of a school official that he submit to a search.
[16] 43 Wash.App. 560, 718 P.2d 837.
[17] See also Slattery, 56 Wash.App. 820, 787 P.2d 932 (Slattery conceded that a search of his person was reasonable where a reliable informant told the principal that Slattery was selling marijuana in the parking lot and the principal had received other reports that Slattery was involved with drugs); State v. Sweeney, 56 Wash.App. 42, 782 P.2d 562 (1989) (ordering Sweeney to empty his pockets and search were reasonable where a student leader in Sweeney's dormitory informed the dormitory supervisor that Sweeney was selling drugs, and the supervisor already suspected Sweeney of drug involvement because other students came and went from Sweeney's room at unusual hours).