255 P.3d 828 (2011)
162 Wn. App. 27
STATE of Washington, Respondent,
v.
J.M., Appellant.
No. 64699-1-I.
Court of Appeals of Washington, Division 1.
May 23, 2011.
*829 Christopher Gibson, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
William Leonard Doyle, King County Prosecutors' Office, Seattle, WA, for Respondent.
SPEARMAN, J.
¶ 1 We are asked to decide the constitutionality of a school resource officer's warrantless post-arrest search of a high school student's locked backpack on school grounds, where the search, which revealed an air pistol, was conducted after the officer saw the student holding suspected marijuana. A trial court found J.M., a juvenile, guilty of carrying a dangerous weapon at school and possessing less than 40 grams of marijuana. He *830 appeals his dangerous weapon conviction, arguing that the trial court erred in ruling that the school resource officer (SRO) was a "school official" conducting a school search and therefore needed only reasonable grounds to search rather than probable cause. He argues, moreover, that even if the SRO was a school official, his search was not supported by reasonable grounds. Under the facts of this case, we hold that the reasonable grounds standard applied to the SRO's search and that the search was supported by reasonable grounds. We affirm.

FACTS
¶ 2 On February 4, 2009, Bellevue police officer Michael Fry was on duty as an SRO at Robinswood High School in Bellevue, Washington.[1] He had worked as an SRO for approximately 12 years, assisting with discipline matters and exercising arrest powers. His primary duties were to maintain a safe, secure, and orderly learning environment, and he rarely handled nonschool-related calls while on duty as an SRO. That day, while checking one of the school's restrooms, Fry saw J.M., a student, standing at a sink, holding what appeared to be a baggie of marijuana and a medicine vial. Next to J.M. was a blue backpack. As Fry approached J.M., he smelled a strong odor that he recognized as that of marijuana. Fry seized the suspected marijuana, vial, and backpack and took J.M. to the dean of students, Phyllis Roderick. Roderick sat at her desk while Fry and J.M. sat facing her with J.M.'s backpack between them. Fry explained to Roderick what he had observed. He then informed J.M. that he was under arrest and called for another officer to come to the school to assist him. Fry sought to search J.M.'s backpack, which had a padlock running through the pull tabs on the zipper to the main compartment. Despite the lock, Fry was able to unzip the compartment wide enough to get his hand inside and withdraw a few items. He asked J.M. for the key to the lock, but J.M. said he had left it at home. Fry was suspicious as to why J.M. would bring a locked backpack to school and not have a key. Fry handcuffed and searched J.M., finding keys in his jacket. He used one key to open the backpack and discovered an air pistol inside. Officer David Finney arrived shortly thereafter. Fry read J.M. his Miranda[2] rights, and J.M. indicated he did not wish to answer any questions. Finney took J.M. to the precinct for booking.
¶ 3 J.M. was charged with one count of carrying a dangerous weapon at school and one count of possession of less than 40 grams of marijuana. J.M. filed a motion to suppress the air pistol, arguing that the search of his backpack violated his constitutional privacy rights. The court commissioner denied the motion, entering findings of fact and conclusions of law. J.M. agreed to an adjudication on stipulated facts, and the trial court found him guilty as charged. J.M. challenged the commissioner's suppression ruling in a motion for revision. The superior court judge denied the motion and imposed a standard range disposition.[3] J.M. appeals his dangerous weapon conviction, claiming that the trial court's denial of his suppression motion was reversible error.

DISCUSSION
¶ 4 J.M. argues that Fry was not a "school official" conducting a school search and therefore his search had to be supported by probable cause rather than reasonable *831 grounds. He also argues that the search was not permissible under the reasonable grounds standard. We disagree with both arguments and affirm.
¶ 5 J.M. does not challenge any findings of fact, but instead bases his appeal on issues of law and the superior court's application of the law to the facts in his case. We review issues of law, as well as a trial court's application of the law to the facts, de novo. State v. Dow, 168 Wash.2d 243, 248-249, 227 P.3d 1278 (2010) (citing State v. Law, 110 Wash.App. 36, 39, 38 P.3d 374 (2002)).
¶ 6 The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution protect individuals from unreasonable searches and seizures. Government agents must therefore have a search warrant issued upon probable cause unless some other condition justifies a warrantless search. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). See also State v. McKinnon, 88 Wash.2d 75, 79, 558 P.2d 781 (1977). One exception to the warrant requirement, under both the federal and state constitutions, is a search conducted in a school setting by school authorities. New Jersey v. T.L.O., 469 U.S. 325, 341-42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); State v. Brooks, 43 Wash.App. 560, 563-64, 718 P.2d 837 (1986).
¶ 7 Under the "school search" exception, school officials may search a student's belongings without a warrant if, under all the circumstances, the search is reasonable. State v. Slattery, 56 Wash.App. 820, 823-24, 787 P.2d 932 (1990). A search is reasonable if it is justified at its inception and the scope of the search is reasonably related to the reasons justifying it. Id. The constitutionality of Officer Fry's search of J.M.'s backpack depends in part on whether the school search exception to the warrant requirement applies.[4]
¶ 8 J.M. argues that the school search exception does not apply because Fry was not a "school official" at the time of the search. He cites State v. McKinnon, 88 Wash.2d 75, 558 P.2d 781 (1977), arguing that under that case, Fry's duties showed that he was not a school official but rather a "police officer acting within police authority."[5] He contends that Fry was mainly responsible for maintaining a "safe learning environment," and preventing and discovering crime at Robinswood. He points out that Fry's duties as an SRO did not preempt his law enforcement duties and that Fry was available to assist other police officers with matters unrelated to the school even during his shift as an SRO. Moreover, he contends that Fry was paid by the Bellevue Police Department, not by the Bellevue School District.
¶ 9 The State urges us to reject any distinction between a non-law enforcement security officer and a police officer on assignment to a school as an SRO, arguing that "the fulfillment of the school's duty to protect students from danger should not depend on whether the school district or the city employs the SRO." The State further argues that requiring probable cause would unduly *832 interfere with a school's ability to maintain swift and informal disciplinary procedures.
¶ 10 We hold that under the facts of this case, Fry was acting as a school official and the reasonable grounds standard applied. As the parties acknowledge, Washington courts have not decided whether SROs are school officials for purposes of conducting student searches, but we find guidance in decisions from other jurisdictions.
¶ 11 The Illinois Supreme Court, in People v. Dilworth, 169 Ill.2d 195, 214 Ill.Dec. 456, 661 N.E.2d 310 (1996), held that the search of a student by a "liaison officer," a police officer employed by the police department and assigned full-time to an alternate high school, was governed by the reasonable suspicion standard rather than probable cause. Id. at 207-08, 214 Ill.Dec. 456, 661 N.E.2d 310. The court noted that post-T.L.O. decisions from various jurisdictions that involved police officers in school settings could generally be separated into three categories: "(1) those where school officials initiate a search where police involvement is minimal, (2) those involving school police or liaison officers acting on their own authority, and (3) those where outside police officers initiate a search." Id. at 206, 214 Ill.Dec. 456, 661 N.E.2d 310. It noted that in cases involving the first or second category, most courts have applied the reasonable suspicion standard, while in cases involving the third category, most courts have required probable cause. Id. at 206-07, 214 Ill.Dec. 456, 661 N.E.2d 310. The court held that the reasonable suspicion standard applied where the case was "best characterized as involving a liaison police officer conducting a search on his own initiative and authority, in furtherance of the school's attempt to maintain a proper educational environment." Id. at 208, 214 Ill.Dec. 456, 661 N.E.2d 310.
¶ 12 Similarly, the Indiana Court of Appeals, in S.A. v. State, 654 N.E.2d 791, 795 (Ind.Ct.App.1995) (overruled on other grounds, Alvey v. State, 911 N.E.2d 1248 (Ind.2009)), rejected the argument that the school search standard did not apply to the search of a high school student's book bag because the police officer who conducted it was not a school official:
While Officer Grooms is a trained police officer, he was acting in his capacity as security officer for the [Indianapolis Public School] schools. Grooms is employed by the [Indianapolis Public School Police Department] and as such, his conduct regarding student searches on school premises is governed by the test announced in [T.L.O.].
Id. at 795.
¶ 13 We hold that, like the officers in Dilworth and S.A., Officer Fry was acting as a school official when he searched J.M.'s backpack. He was on duty as an SRO and acting under his authority as an SRO when he personally observed the activity that formed the basis for his search of J.M. Furthermore, though the McKinnon court did not address the issue of who can be considered a school official, its decision did suggest that the difference between a school official and law enforcement is that the latter is chiefly concerned with discovering and preventing crime.[6] Because it is undisputed that Fry's primary duties as an SRO were to maintain a safe, secure, and orderly learning environment, it is reasonable to infer that his chief duty was not the discovery and prevention of crime. Under these facts, the reasonable grounds standard applies.

Reasonable Grounds to Search
¶ 14 J.M. argues that even if Fry was acting as a school official, he lacked reasonable *833 grounds to search J.M.'s backpack. J.M. points out that, at the time of the search, (1) he had already been arrested and handcuffed; (2) the officer had already seized the backpack; and (3) he had no way to access the contents of the backpack, so there was no reason to fear he might remove its contents, destroy them, or use them against anyone. Citing State v. B.A.S., 103 Wash. App. 549, 554-56, 13 P.3d 244 (2000), J.M. argues that the search violated his privacy rights because there were no exigent circumstances justifying an immediate search, and an immediate search was not necessary to further the purpose of maintaining school discipline and order.
¶ 15 The State argues that Fry had reasonable grounds to conduct the search because (1) he saw J.M. holding marijuana while standing only a foot away from his backpack and (2) the backpack had a padlock on it, justifiably arousing Fry's suspicion of contraband, particularly when J.M. falsely claimed he did not have the key to the lock. The State also contends that there were exigent circumstances to make the search without delay because schools need the freedom to act swiftly to maintain discipline and order on school grounds. Moreover, the State argues, even if there were no exigent circumstances, there is no authority stating that all of the McKinnon factors must be met for a search to be found reasonable.
¶ 16 It is well settled that in the school search context, a reasonable search is one that is justified at its inception and reasonably related in scope to the facts that justified the interference in the first place. T.L.O., 469 U.S. at 341-42, 105 S.Ct. 733. Ordinarily, "a search is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." Id. (internal quotation marks and citation omitted). A search is "permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 341-42, 105 S.Ct. 733.
¶ 17 Similarly, our Supreme Court has held that "the search of a student's person is reasonable and does not violate his Fourth Amendment rights, if the school official has reasonable grounds to believe the search is necessary in the aid of maintaining school discipline and order." McKinnon, 88 Wash.2d at 81, 558 P.2d 781. In determining whether a school official had reasonable grounds to search, Washington courts consider (1) the student's age, history, and school record; (2) the prevalence and seriousness of the problem in the school to which the search was directed; (3) the probative value and reliability of the information justifying the search; and (4) the exigency to make the search without delay.[7]Id. While all the factors need not be found, their total absence will render the search unconstitutional. State v. Brooks, 43 Wash.App. 560, 568, 718 P.2d 837 (1986); Kuehn v. Renton Sch. Dist. No. 403, 103 Wash.2d 594, 598, 694 P.2d 1078 (1985).
¶ 18 We hold that Officer Fry had reasonable grounds to search J.M.'s locked backpack. Fry's search was justified at its inception because, once Fry observed J.M. standing at a sink with a medicine vial with what appeared to be marijuana in his hand, Fry had reason to suspect that the backpack next to him also contained marijuana in violation of the law and school regulations. The search was permissible in its scope because Fry's action in opening J.M.'s locked backpack was reasonably related to his objective to discover whether it contained additional marijuana.
¶ 19 In addition, at least two of the four McKinnon factors are met: (1) Fry and dean of students Roderick noted the prevalence *834 and seriousness of the drug problem at the school (both recalled five or six incidences in the past year alone where illegal substances were found), and (2) the probative value and reliability of the information justifying the search was high, because Fry personally saw J.M. holding what appeared to be marijuana while standing a foot away from his backpack. The record contains no evidence regarding J.M.'s age, history, and school record.[8] Nor is there evidence in the record that exigent circumstances existed to conduct the search of the backpack immediately.[9] But while the absence of those factors has some bearing on the reasonableness of the search, it does not, in and of itself, render the search unconstitutional. See Brooks, 43 Wash.App. at 568, 718 P.2d 837; Kuehn, 103 Wash.2d at 598, 694 P.2d 1078.
¶ 20 J.M. cites State v. Slattery, 56 Wash. App. 820, 787 P.2d 932 (1990) and State v. B.A.S., 103 Wash.App. 549, 13 P.3d 244 to argue that the absence of exigent circumstances made the search of his backpack unlawful. But his reliance on these cases is misplaced. In Slattery, school officials acted on a tip from a student that Slattery was selling marijuana in the school parking lot. Id. at 821-22, 787 P.2d 932. They first searched Slattery, who was carrying $230 and a paper with a pager number written on it. They then searched his car, where they found a pager and a notebook with names and dollar amounts written inside. Inside the locked trunk they found a locked briefcase. Id. at 822, 787 P.2d 932. Slattery first claimed that he did not know who owned the briefcase, but then said it belonged to a friend and that he did not know the combination. Id. A security officer pried open the briefcase and found what appeared to be marijuana inside. Id.
¶ 21 Slattery argued that the search of his car and the locked briefcase was unreasonable because the school search exception was limited and applied only to "unintrusive" searches. Id. at 824, 787 P.2d 932. We disagreed, holding that school officials had reasonable grounds for suspecting that a search of Slattery would reveal evidence he had violated the law and that the search of his car and locked briefcase were reasonably related in scope to the circumstances justifying the initial interference. Id. at 826, 787 P.2d 932. We noted that the presence of three out of four McKinnon factors supported our conclusion that the search was reasonable: (1) the information leading to the search was reliable, (2) there was a serious drug problem at the school, and (3) an exigent circumstance existed because Slattery or a friend could have removed the car and the evidence from school grounds. Id. at 825, 558 P.2d 781.
¶ 22 J.M. correctly points out that here, there were no exigencies to make the search without delay, because he was already arrested and in handcuffs at the time of the search and could not access his backpack. But his argument that the search of his backpack was unlawful for that reason does not follow, and nothing we said in Slattery suggests otherwise. Indeed, the relevance of Slattery, as it pertains to this case, is that while we did not identify any exigencies with regard to the search of Slattery's locked briefcase, we nonetheless concluded that the search was justified. We found the search lawful because school officials had reasonable grounds to suspect that Slattery was in possession of marijuana and the search of the locked briefcase was within the scope of reasonable places to search for evidence of it. Likewise, in this case, we conclude that the search was justified because there were reasonable grounds to believe that J.M. was in possession of marijuana, and the search of J.M.'s *835 locked backpack was a place where evidence of more contraband was likely to be found.
¶ 23 Finally, B.A.S. does not, as J.M. contends, stand for the proposition that the search of a student is reasonable only if there is a reasonable concern of criminal conduct and there is an immediate need to determine whether those concerns are founded. Our ruling in B.A.S that the search of a student was not supported by reasonable grounds was based mainly on our conclusion that there was no nexus between the suspected violation of the school's closed campus policy and the likelihood that the student had brought contraband onto campus. B.A.S., 103 Wash.App. at 553, 13 P.3d 244. We noted that other factors "[lent] further support" to our conclusion that the search was not justified, only one of which was the lack of exigent circumstances. Id. at 555-56, 13 P.3d 244 (emphasis added).
¶ 24 In sum, we hold that Officer Fry was acting as a school official during his search of J.M.'s backpack and that the reasonable grounds standard applied to the search. We further hold that under that standard, the search was constitutional.
¶ 25 Affirmed.
WE CONCUR: LEACH, A.C.J., and LAU, J.
NOTES
[1] Fry's salary was paid by the Bellevue Police Department, which was partially reimbursed for Fry's services by the Bellevue School District.
[2] Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] In its order denying the motion for revision, the trial court noted that Fry lacked probable cause to search the backpack, but that the presence of marijuana, the fact that the backpack belonged to J.M. (who said he left the key at home), and the padlock created reasonable grounds for Fry to search the backpack. The court explained:

This court sees no reason to distinguish between school officials searching, school security guards searching and a police officer on assignment to a school, acting as security. From the perspective of the student-citizen being searched, the invasion of privacy is identical. Any distinction focuses on the insignificant factor of who pays the officer's salary, rather than on the officer's function at the school and the special nature of a public school.
[4] J.M. argues that if the school search standard does not apply, the search was per se unreasonable because post-arrest searches of locked containers must be authorized by a valid search warrant, citing State v. Stroud, 106 Wash.2d 144, 152, 720 P.2d 436 (1986), overruled on other grounds, State v. Valdez, 167 Wash.2d 761, 224 P.3d 751 (2009). The State does not dispute this.
[5] In McKinnon, the Snoqualmie chief of police received a call from a confidential informant that two high school students were selling speed. McKinnon, 88 Wash.2d at 77, 558 P.2d 781. The police chief contacted the high school principal, who said he would talk to the students. The principal made contact with both students and reached into their pockets, finding amphetamines where the informant said they would be. Id. He then called the police chief to arrest the students. The students argued that the searches violated their right to be free from unreasonable searches and seizures because the principal was a state official. Id. at 78, 558 P.2d 781. The court held that the principal's searches did not violate the Fourth Amendment. It first noted that the principal was not a law enforcement officer, then went on to hold that "the search of a student's person is reasonable and does not violate his Fourth Amendment rights, if the school official has reasonable grounds to believe the search is necessary in the aid of maintaining school discipline and order." Id. at 81, 558 P.2d 781. The court's holding did not address which individuals are considered school officials.
[6] Specifically, the court noted the difference between the principal and a law enforcement officer:

[The high school principal's] job does not concern the discovery and prevention of crime. His duty as the chief administrator of the high school includes a primary duty of maintaining order and discipline in the school. In carrying out this duty, he should not be held to the same probable cause standard as law enforcement officers. Although a student's right to be free from intrusion is not to be lightly disregarded, for us to hold school officials to the standard of probable cause required of law enforcement officials would create an unreasonable burden upon these school officials. Maintaining discipline in schools oftentimes requires immediate action and cannot await the procurement of a search warrant based on probable cause.
McKinnon, 88 Wash.2d at 81, 558 P.2d 781.
[7] The revision court in this case did not apply the McKinnon factors. Instead, it applied the three-part analysis used by the U.S. Supreme Court in Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). These factors are: "(1) the nature of the privacy interest on which the search intrudes, (2) the character of the search, and (3) the nature and immediacy of the governmental concern at issue, and the efficacy of this means for meeting it." Id. at 654-64, 115 S.Ct. 2386.
[8] J.M.'s age and school record are not in the court record. Also, in response to motions in limine, the parties agreed not to offer history of prior contacts between J.M. and Fry under ER 404(b).
[9] While the State argues that the need to maintain discipline and school order is an exigent circumstance justifying the search of J.M.'s backpack, it does not explain how, on the facts of this case, an immediate warrantless search furthered the school's interest in maintaining discipline and order on school grounds. This bald assertion, without more, is insufficient to establish an exigency justifying an immediate search. Cf. State v. Brown, 158 Wash.App. 49, 240 P.3d 1175 (2010) (weapon on school grounds constituted threat to order and discipline of school justifying immediate search).