IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76823-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| A.S., | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 3, 2018 |

SMITH, J. — A.S. appeals her conviction for possession of drug

paraphernalia and possession of a controlled substance. A.S. argues that the

trial court erred by denying her motion to suppress evidence found by the vice

principal of Meadowdale Middle School when he searched A.S.'s backpack on

school grounds. Because the search of A.S.'s backpack was not reasonable

under the circumstances, we reverse.

FACTS

On April 11, 2016, Meadowdale staff received information about an

alleged threat involving then 14-year-old A.S., who was not a Meadowdale

student. Meadowdale staff looked up A.S.'s picture using the district's computer

system so that they would be able to identify her should she appear on campus.

Later that day, Joseph Webster, Meadowdale's vice principal, saw A.S. walk by

the school's office. Webster approached A.S., called out her name, and asked

her to come with him to the office. Webster later testified that if he were to

encounter an individual he thought did not have a reason to be on campus, he ordinarily would ask that person to leave. He did not do so here because he believed A.S. was there for a "negative reason."

A.S. complied with Webster's request to accompany him to the school office. Webster brought A.S. to Principal Jennifer Kniseley's office, where Kniseley began asking A.S. questions about why she was on the Meadowdale campus. A.S. was not very cooperative. After about five minutes, Kniseley remarked to Webster that A.S. was not being very cooperative and decided to call the police. A.S. was told that the police were being called. Webster later testified that had A.S. gotten up and decided to leave, she would have been allowed to do so. Webster also testified that because A.S. was not a student at Meadowdale, he and Kniseley did not have any ability to issue any discipline to A.S.

At some point while A.S. was in Kniseley's office, Webster noticed an odor that he recognized as marijuana emanating from A.S. Webster then searched A.S.'s backpack, which was sitting next to her, and found suspected marijuana and drug paraphernalia. A.S. did not say or do anything to resist Webster's search of her backpack.

A police officer responded at 2:29 p.m.—less than half an hour after Webster first observed A.S. on campus—and A.S. was later charged by information with possession of drug paraphernalia and possession of a controlled substance. Prior to trial, A.S. moved to suppress the evidence of the suspected marijuana and drug paraphernalia found in her backpack, arguing that the

2

evidence was the fruit of an unlawful search and seizure. Specifically, A.S. argued that the "school search exception" to the warrant requirement did not apply to her because she was not a Meadowdale student when Webster searched her backpack and even if the exception did apply, the search was not reasonable.

The trial court denied A.S.'s motion and, following a stipulated bench trial, convicted A.S. of both possession of drug paraphernalia and possession of a controlled substance. A.S. appeals.

ANALYSIS

*Standard of Review*

The facts are not in dispute, and A.S. challenges only the trial court's conclusions of law. Accordingly, we review the issues de novo. State v. Meneese, 174 Wn.2d 937, 942, 282 P.3d 83 (2012).

*The School Search Exception*

Under both the state and federal constitutions, a government actor must obtain a warrant supported by probable cause to conduct a search unless an exception applies. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7; Meneese, 174 Wn.2d at 943. The exceptions to the warrant requirement are "'jealously and carefully drawn.'" State v. McKinnon, 88 Wn.2d 75, 79, 558 P.2d 781 (1977) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)).

One of these exceptions is the "school search exception," which allows school authorities to conduct a search of a student without probable cause if the

3

search is reasonable under all the circumstances. State v. B.A.S., 103 Wn. App. 549, 553, 13 P.3d 244 (2000). "A search is reasonable if it is: (1) justified at its inception; and (2) reasonably related in scope to the circumstances that justified the interference in the first place." Id. (citing New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985)). "Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." T.L.O., 469 U.S. at 341-42 (footnote omitted). And, a search will be permitted in scope "when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 342.

Washington courts have established the following factors (McKinnon factors) as relevant in determining whether school officials had reasonable grounds for conducting a warrantless search:

> "[T]he child's age, history, and school record, the prevalence and seriousness of the problem in the school to which the search was directed, the exigency to make the search without delay, and the probative value and reliability of the information used as a justification for the search."

State v. Brooks, 43 Wn. App. 560, 567-68, 718 P.2d 837 (1986) (quoting McKinnon, 88 Wn.2d at 81). Although all of the foregoing factors need not be found, their total absence will render the search unconstitutional. Id. at 568.

*Warrantless Search of A.S.'s Backpack*

As an initial matter, A.S. urges this court to conclude that the school search exception cannot apply to searches of nonstudents. We decline to adopt such a bright-line rule because doing so would reach beyond the facts here: Even assuming that the exception applies to nonstudents, the search conducted by Webster does not pass muster under the McKinnon factors.

Specifically, nothing in the record suggests that Webster, who guessed that A.S. was middle school aged, knew anything about A.S.'s history or school record. Indeed, Webster testified that when he looked up A.S. in the district database, he was only interested in her picture. Furthermore, there was no evidence that drug use was a problem at Meadowdale. Rather, when asked whether Meadowdale had a drug problem, Webster responded, "I don't believe so." He also testified that he did not deal with drugs on a regular basis as a school administrator and that Meadowdale had only "occasional incidents" on its campus involving students bringing drugs or drug paraphernalia on campus. Additionally, there was no exigency to conduct the search without delay, given that the police had been called, and A.S.—who had been told that the police were called—gave no indication that she was trying to leave the principal's office. And finally, the odor of marijuana alone did not create an exigent circumstance, particularly where Webster had no other reason to believe that A.S. used marijuana or that her backpack would contain marijuana. For these same reasons, the search of A.S.'s backpack was not justified at its inception.

The State argues that the search of A.S.'s backpack was reasonable because courts have generally "'recognized students have a lower expectation of privacy because of the nature o[f] the school environment.'" Br. of Resp't at 13 (quoting York v. Wahkiakum Sch. Dist. No. 200, 163 Wn.2d 297, 308, 178 P.3d 995 (2008)). But this quote from York is no more than a restatement of one of the justifications underlying the school search exception. See York, 163 Wn.2d at 308. That exception still demands that, consistent with both the federal and state constitutions, searches be reasonable, and "what is reasonable depends on the context within which a search takes place." T.L.O., 469 U.S. at 337.

To this end, the underlying rationale for the school search exception is that "'teachers and administrators have a substantial interest in maintaining discipline in the classroom and on school grounds' which often requires swift action." Meneese, 174 Wn.2d at 944 (internal quotation marks omitted) (quoting State v. Slattery, 56 Wn. App. 820, 824, 787 P.2d 932 (1990)). Here, Webster searched the backpack of A.S., a 14-year-old nonstudent he had no ability to discipline. He based his search solely on an odor of marijuana emanating from A.S. as she sat in the principal's office waiting for a police officer to arrive. A.S. gave no indication that she planned to leave, and her backpack was merely sitting next to her. Under these circumstances, no "swift action" was required, nor did the search further any interest in "maintaining discipline." Cf. id. at 944-45 (declining to extend the school search exception to a school resource officer acting in the capacity of a law enforcement officer and observing that (1) the school resource officer had no authority to discipline students and (2) there was no need for swift

discipline because the student was already under arrest and about to be removed from campus at the time of the search).

The facts at bar are readily distinguishable from cases where we have applied the McKinnon factors and concluded that a school search was reasonable. For example, in Brooks, where the vice principal had received information from a student that Steve Brooks was selling marijuana out of a school locker, we upheld the warrantless search of student Brooks' locker. 43 Wn. App. at 561-62. There, the vice principal had received reports from three teachers that Brooks appeared to be under the influence. Id. at 562. Indeed, the vice principal herself had confronted Brooks about drug use on three occasions and each time believed that Brooks was under the influence. Id. Additionally, Brooks was known to spend time during school hours at a place believed by school authorities to be the site of drug trafficking. Id. We reasoned that under those facts, there were reasonable grounds for school officials to suspect that a search of Brooks' locker would turn up evidence that Brooks was violating either the law or the rules of the school. Id. at 565.

Similarly, in Slattery, we upheld the search of a locked briefcase in student Mike Slattery's car where another student had notified the vice principal that Slattery was selling marijuana in the school parking lot. 56 Wn. App. at 821-22. The vice principal believed this information to be reliable based on the vice principal's past experience with the informant and because the vice principal had received other reports that Slattery was involved with drugs. Id. at 822. Additionally, Slattery was carrying $230 cash in small bills and his car also

7

contained a notebook with names and dollar amounts, as well as a pager. Id. In applying the McKinnon factors, we also observed that drug use was a "serious, ongoing problem" at the school and that an exigency existed because Slattery or a friend could have removed Slattery's car from school grounds. Id. at 825-26.

Here, unlike Brooks or Slattery, nothing in the record suggests that before his encounter with A.S., Webster had any information about A.S.'s prior conduct that would lead him to believe that A.S. used or possessed marijuana, or that a search of A.S.'s bag would reveal marijuana. Indeed, Webster testified that he did not do any investigation into the alleged threat involving A.S. and that when he looked up A.S. in the district computer system, he was only interested in her picture. Furthermore, there is no evidence that drug use was a serious, ongoing problem at Meadowdale. Rather, Webster testified that he did not believe that Meadowdale had a drug problem and that Meadowdale had only "occasional incidents" involving students bringing drugs on campus. Additionally, no exigency was present because unlike Slattery, there was no car involved. At the time of the search, A.S. was sitting in the principal's office, waiting for the police to arrive. The State argues that A.S. could have walked away and then school officials would have had no control over her, but this argument is not persuasive given that A.S. never indicated that she wanted to leave and given that she had been told that the police were being called. The facts in Brooks and Slattery are sufficiently dissimilar to the facts here that they do not control.

The State next argues, citing State v. Brown, 158 Wn. App. 49, 240 P.3d 1175 (2010), that in the context of a school search, the exigency component of

8

the McKinnon factors is satisfied when there is "any threat to the order and discipline of the school." Br. of Resp't at 10. Although the State accurately quotes Brown, the State's reliance on Brown is misplaced. In Brown, a parent went to Moses Lake High School to look for her son, Taylor Duke, after he did not come home one night. 158 Wn. App. at 53. There, she told the assistant principal that her son had been with his friend, Joshua Brown, the night before and that Brown's car was in the school parking lot. Id. When the assistant principal did not find Brown or Duke in class, he and the school's resource officer checked Brown's car and found both boys asleep inside. Id. The assistant principal knocked on the window, and both boys woke up and got out of the car. Id. The resource officer saw a knife on the floor behind the front passenger seat as Duke climbed out of the car and told the assistant principal what he had seen. Id. The assistant principal then asked Brown if he could retrieve the knife, and Brown agreed. Id. The assistant principal searched Brown's car, where he found a shotgun and a .22 caliber pistol with bullets in a case. Id. Brown was later arrested and convicted of firearms charges. Id. at 54. In concluding that the search of Brown's car fell within the school search exception, the trial court wrote:

> "The presence of weapons in a school environment is a serious problem in schools throughout the country and has specifically impacted the Moses Lake School District (e.g., Barry Loukitas [sic]). That a Moses Lake school administrator would be concerned about the presence of weapons on the campus of a school in the Moses Lake School District is to be expected. There was an exigency in that lunch was fast approaching and students would be returning to the parking lot. A student could have removed the knife (or any other weapon) from the vehicle. The probative value and reliability of the information used to justify the

9

search, i.e., Officer Lopez's visual observation of a weapon in Respondent Brown's vehicle, was high. Given these considerations and given the circumstances, the 'school search' exception to the warrant requirement applies in this case, and the school administrators' search of Respondent Brown's vehicle was reasonable."

Id. at 55 (alteration in original). On appeal, Division Three of this court upheld the search, noting again that "[t]his school district has had serious problems with weapons on campus in the past." Id. at 57 (citing State v. Loukaitis, 82 Wn. App. 460, 462-63, 918 P.2d 535 (1996)). The court concluded that the threat a weapon posed to discipline and order was an exigency sufficient to support a school search. Id.

Brown is distinguishable from this case. The suspected possession of marijuana by a 14-year-old child sitting in the principal's office waiting for the police to arrive and giving no indication that she plans to leave—and who school officials have no reason to believe is selling drugs to other students—does not pose the same threat to the discipline and order of a school that is posed by a gun with bullets found in a high school student's car in the school parking lot just before the lunch hour.

The State next argues that the search was justified because A.S. was acting suspiciously when she did not report to the main office as directed by signage at the school and when she refused to state her business on campus. The State urges that these circumstances indicate that A.S. was hiding something "and that something could include marijuana." Br. of Resp't at 15. The State also argues that A.S.'s presence at Meadowdale when she should have been in school was "alarming" and that "[t]he search of the bag was

10

necessary to ensure that any additional marijuana would not be a factor in a potential conflict on campus." Br. of Resp't at 10-11. In short, the State attempts to draw a nexus between A.S.'s alleged truant status and Webster's search of A.S.'s bag.

Even if A.S. was in fact truant and did in fact intend not to check in with the main office,[1] the State's arguments are not persuasive. B.A.S., is instructive. B.A.S. involved Auburn Riverside High School, which had a "closed campus" policy. 103 Wn. App. at 551. That policy "prohibit[ed] students from leaving campus during school hours without permission from the school." Id. The school also had a policy that "any student seen in the parking lot without permission or a valid excuse [would be] subject to search." Id. at 551-52. The purpose of the policy was to "promote safety by ensuring that students do not bring prohibited items, such as drugs and weapons, onto school grounds." Id. at 552. When a school attendance officer saw B.A.S. and three other students by the parking lot and concluded that they had been off campus without permission, the attendance officer invoked the school's search policy and asked B.A.S. to empty his pockets. Id. The contents of B.A.S.'s pockets included several plastic baggies filled with marijuana. Id.

In reversing B.A.S.'s subsequent conviction, we rejected the State's argument that by violating school rules, a student necessarily draws individualized suspicion on himself. Id. at 554. We reasoned:

---

[1] The record does not indicate whether A.S. had a valid excuse to be away from school that day. The record also does not indicate how long A.S. was on the Meadowdale campus before Webster approached her.

> There is no indication that B.A.S. habitually broke the law or school rules, or that he or his friends had ever brought contraband onto the school's campus. The record is also silent on whether B.A.S. had either academic or behavioral difficulties in school. In short, there was nothing about B.A.S.'s age, history or school record that justified the search. Finally, there were no exigent circumstances present here. In sum, there was no basis articulated in the record for suspecting B.A.S. was carrying proscribed items, and the search was therefore unreasonable.

Id. at 556.

Here, as in B.A.S., nothing in the record suggests Webster believed that A.S. habitually broke the law or school rules, had ever brought contraband onto Meadowdale's campus, or had academic or behavioral difficulties. Indeed, Webster had only secondhand knowledge about the alleged threat involving A.S. and confirmed that he did not do any further investigation into the alleged threat. And, as discussed above, there were no exigent circumstances present. Furthermore, the fact that A.S. did not—or perhaps had not yet had time to— check in with Meadowdale's main office is not a justification for searching her bag for marijuana: Nothing in the record suggests that A.S. acted suspiciously or that she was questioned—much less deceptive—about any marijuana use. Cf. State v. E.K.P., 162 Wn. App. 675, 677, 255 P.3d 870 (2011) (search of student's backpack upheld where student acted suspiciously by trying to hide her backpack and denied that the backpack contained "'anything [the assistant principal] need[ed] to know' about") (internal quotation marks omitted); T.L.O., 469 U.S. at 325 (search of student's purse upheld where teacher had seen student smoking in lavatory and student denied doing so when questioned about it). And although Webster recognized the smell of marijuana on A.S., that alone

does not make the search reasonable given that as discussed above, none of the other McKinnon factors were present.

This case is also distinguishable from United States v. Aguilera, 287 F. Supp. 2d 1204 (E.D. Cal. 2003), the only case discussed by the parties in which the court evaluated the reasonableness of a school search involving a nonstudent. There, an informant who identified herself as the parent of a Franklin High School student called the secretary at Franklin from her car near the side entrance of the school. Id. at 1206. The caller reported observing a group of young men pass close to her car on the way into campus and seeing one of them lift his T-shirt above his waist to reveal a weapon tucked into his shorts. Id. The caller stayed on the phone with the school secretary and continued to update the secretary as to the group's location until the caller's view was obscured by the school gym. Id. Meanwhile, the secretary relayed the caller's observations to the school principal, who in turn alerted campus security monitors. Id. at 1207.

Based on the information provided by the caller, including a description of the young man seen with a weapon, campus security monitors located Gustavo Aguilera with a group of young men on the school campus. Id. A security monitor radioed the principal to let her know that the group had been located, and the principal directed the security monitor to search Aguilera. Id. The security monitor ordered Aguilera to place his hands on the wall of a portable classroom, and the security monitor patted Aguilera's outer clothing and discovered a 20-gauge shotgun in the waistband area of Aguilera's shorts. Id.

Aguilera argued to the trial court that the shotgun discovered in his waistband should be suppressed, contending, among other things, that Aguilera's status as a nonstudent took him outside the parameters of the school search exception. Id. at 1209. The trial court disagreed, reasoning:

> [T]o extend the [school search exception] to non-student visitors *who present a credible threat of physical harm to students on campus* would seem a small and logical step. In short, the court finds that defendant's status as a non-student should not determine the response of school administrators *to the threat of gun violence.*

Id. (emphasis added) (footnote omitted).

Here, A.S., who was sitting in the principal's office—not roaming the campus as Aguilera was—did not present a credible threat of physical harm when she was searched. Indeed, Webster never indicated that he searched A.S. because he thought that her use or possession of marijuana presented a credible threat of physical harm. Aguilera is not persuasive here.

If anything, Aguilera suggests that if the school search exception is to be extended to a nonstudent, it should be extended only when the nonstudent presents a credible threat of physical harm to students on campus and when the scope of the search conducted (in the case of Aguilera, a frisk for dangerous weapons) is directly related to that threat. That was not the case here, and Aguilera does not control. Cf. In re D.D., 146 N.C. App. 309, 554 S.E.2d 346 (2001) (applying school search exception to nonstudents and upholding search for weapons after principal received information that nonstudent was part of group coming to school to fight and weapon was discovered in purse of another member of the group).

14

As a final matter, the State cites <u>State v. Marcum</u>, 149 Wn. App. 894, 205 P.3d 969 (2009), for the proposition that the odor of marijuana alone constitutes probable cause. But <u>Marcum</u> is distinguishable from this case. In <u>Marcum</u>, the detective detained the defendant based on a tip reliable informant that the defendant would be carrying a quarter pound of marijuana in his car. <u>Id.</u> at 899-900. In contrast, Webster had no reason to believe that A.S. would have marijuana in her possession prior to detecting an odor of marijuana on A.S. Furthermore, <u>Marcum</u> is not a school search case, and "what is reasonable depends on the context within which a search takes place." <u>T.L.O.</u>, 469 U.S. at 337. We recognize that in the educational context, school officials have a substantial interest in maintaining discipline and order on school grounds. <u>See</u> <u>id.</u> at 339-40. But, the search conducted in this case did not promote that interest.

We reverse.

WE CONCUR: